SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
J. BARRETT MARUM, Cal. Bar No. 228628
MICHAEL M. LAUTER, Cal. Bar No. 246048
MATT R. KLINGER, Cal. Bar No. 307362
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        okatz@sheppardmullin.com
              bmarum@sheppardmullin.com
              mlauter@sheppardmullin.com
              mklinger@sheppardmullin.com

Proposed Attorneys for the Debtor,
MedCision, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>MedCision, LLC,<br><br>                          Debtor. | Chapter 11<br>Case No. 17-31272<br><br>Hon. Hannah L. Blumenstiel<br><br>**SUPPLEMENT TO MOTION FOR ORDER (1) AUTHORIZING POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3) AND 364(D)(1); (2) AUTHORIZING THE USE OF CASH COLLATERAL; (3) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; (4) PROVIDING ADEQUATE PROTECTION; (5) MODIFYING THE AUTOMATIC STAY; AND (6) GRANTING RELATED RELIEF**<br><br>Date:   March 22, 2018<br>Time:   10:00 a.m.<br>Judge:  Hon. Hannah L. Blumenstiel<br>Place:  450 Golden Gate Avenue<br>        16th Floor, Courtroom 19<br>        San Francisco, CA  94102 |

MedCision, LLC (the "Debtor") files this supplement to its *Motion For Order (1) Authorizing Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3) And 364(D)(1); (2) Authorizing The Use Of Cash Collateral; (3) Granting Security Interests And Superpriority Claims; (4) Providing Adequate Protection; (5) Modifying The Automatic Stay; And (6) Granting Related Relief* (the "Motion") filed on February 22, 2018 at Docket No. 94.

Attached as Exhibit 1 is a clean copy of the final execution version of the DIP Loan Agreement as agreed to by the Debtor and Lender (as defined in the Motion).

Attached as Exhibit 2 is a redline comparing Exhibit 1 to the version of the DIP Loan Agreement that was attached to the Motion as Exhibit B.

Attached as Exhibit 3 is a clean copy of the final proposed DIP Order as agreed to by the Debtor and Lender.

Attached as Exhibit 4 is a redline comparing Exhibit 3 with the version of the DIP Order that was attached to the Motion as Exhibit A.

The revisions to the DIP Loan Agreement clarify certain matters including a revision of the stipulated amount of Lender's first lien loan and a clarification that the challenge provisions do not apply to challenges to Lender's second lien loan, so that the right to challenge the second lien loan is preserved for the estate.

Dated: March 1, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
        */s/ Michael Lauter*
        MICHAEL LAUTER

Proposed Attorneys for the Debtor,
MedCision, LLC

**<u>EXHIBIT 1</u>**

# DEBTOR-IN-POSSESSION LOAN AGREEMENT

This **DEBTOR-IN-POSSESSION LOAN AGREEMENT** (this "**Agreement**") is dated as of February \_\_\_, 2018, by and between MedCision, LLC, a Delaware limited liability company ("**Borrower**"), and BroadOak Fund II, LLC and BroadOak Fund III, LLC, both Delaware limited liability companies, in their individual capacities and as collateral agents (collectively "**Lenders**"). All capitalized terms have the definitions ascribed to them hereinbelow.

## RECITALS

**WHEREAS**, on December 20, 2017 (the "**Petition Date**"), Borrower commenced a Chapter 7 (the "**Bankruptcy Case**"), by filing a voluntary petition (the "**Petition**") under 11 U.S.C. 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"); and

**WHEREAS**, on February 16, 2018 the Bankruptcy Court entered an order converting the Bankruptcy Case to a reorganization case under Chapter 11 of the Bankruptcy Code; and

**WHEREAS**, as of the Petition Date, Borrower was and remains indebted to Lenders for the repayment of the Pre-Petition Loans; and

**WHEREAS**, Borrower has requested that Lenders provide a senior secured super-primary debtor-in-possession loan to Borrower in the aggregate principal amount not to exceed $80,000, to be used for the purposes set forth herein; and

**WHEREAS**, Borrower desires to secure all Obligations under the Loan Documents by granting Lenders a first priority security interest and lien upon substantially all of its personal and real property; and

**WHEREAS**, Lenders are willing to lend funds to Borrower pursuant to the terms and conditions of this Agreement and the other Loan Documents;

**WHEREAS**, to provide security for and assure the repayment of the Loan and the payment and performance of the other Obligations (as defined herein) of Borrower hereunder and under the other Loan Documents (as defined herein), Borrower agrees that Lenders shall be entitled to the following, among other things as set forth in this Agreement and the Approval Order (each as more fully described herein):

>     (a)     an allowed administrative expense claim in the Bankruptcy Case for all sums due or to become due under this Agreement and the other Loan Documents, with superpriority (subject only to the Carve-Out Expenses) over all administrative expenses specified in the Bankruptcy Code, including without limitation §§ 503(b), 507(b) or 546(c) of the Bankruptcy Code, pursuant to § 364(c)(1) of the Bankruptcy Code; and

(b)     pursuant to Bankruptcy Code § 364(c)(2) and (d)(1), Borrower shall grant to Lenders a first priority perfected Lien (as defined herein) on all of its right, title and interest in and to present and after-acquired Collateral (as defined herein), for the purpose of securing all sums due or outstanding to Lenders under this Agreement and the other Loan Documents, which Lien shall be senior to all claims and interests other than the Carve-Out Expenses.

**NOW**, **THEREFORE**, in consideration of the premises and mutual covenants contained herein, the parties hereto agree as follows:

## SECTION 1.
## DEFINITIONS

1.1.    <u>Defined Terms</u>.  As used in this Agreement, the following terms shall have the meanings specified below:

"<u>Accounts</u>" means all accounts, instruments, documents, chattel paper and general intangibles, whether secured or unsecured, whether now existing or hereafter created or arising, and whether or not specifically assigned to Lenders, including, without limitation, all "accounts" as defined in Article 9 of the UCC.

"<u>Affiliate</u>" means any person or entity which, directly or indirectly, is in control of, is controlled by or is under common control with, Borrower.  For purposes of this definition, "control" of Borrower means the power, directly or indirectly, either to (a) vote 5% or more of the securities having ordinary voting power for the election of directors or managers of Borrower, or (b) direct or cause the direction of the management and policies of Borrower whether through the ownership of voting securities, by contract or otherwise.

"<u>Agreement</u>" means this Debtor-in-Possession Loan Agreement, as amended, supplemented or otherwise modified from time to time.

"<u>Allowed Professional Fees</u>" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the filing of the Bankruptcy Case and (ii) allowed at any time by a final order of the Court pursuant to Sections 326, 328, 330 or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success or similar fees).

"<u>Approval Order</u>" means any order or Order of the Bankruptcy Court entered in the Bankruptcy Case in accordance with Bankruptcy Rule 4001(c)(2), granting interim or final approval of the transactions contemplated by this Agreement and the other Loan Documents and granting the Liens and the Superpriority Claim described herein in favor of Lenders, in form and substance satisfactory to Lenders, for which the time to file an appeal has expired, and no appeal or motion for rehearing has been filed, or if an appeal or motion for rehearing has been filed, but no stay has been entered.

"<u>Approved Budget</u>" means the aggregate, without duplication, of all items approved by Lenders and the Bankruptcy Court that are set forth in the budget attached to the Approval

2

Order, or otherwise provided to Lenders, which Approved Budget shall be certified by the Chief Restructuring Officer of Borrower as having been prepared in good faith based upon assumptions believed by Borrower to be reasonable at the time made.

"Bankruptcy Case" means collectively the bankruptcy case filed as to Borrower.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, or any other court having jurisdiction over the Bankruptcy Case from time to time.

"Bidding Procedures Order" has the definition set forth in the Sale Agreement.

"Business Day" means any day other than a Saturday, Sunday, or other day on which banks in the State of California are required or permitted to close.

"Carve-Out Expenses" shall mean, upon the declaration by Lenders of the occurrence of an Event of Default, each of Lenders' liens, claims and security interests in the Collateral and its Superpriority Claim, shall be subject only to the right of payment of the following expenses:

      a. statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

      b. fees payable to the Clerk of this Court;

      c. subject to the terms and conditions of this Interim Order, Allowed Professional Fees (as defined below) incurred on or after the date of conversion of this case to chapter 11 by attorneys, accountants and other professionals retained by the Debtor and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code, provided that the aggregate amount of such Allowed Professional Fees included in the Carve Out Expenses pursuant to this clause shall not exceed $50,000. For the avoidance of doubt, the $50,000 cap in this subparagraph (c) shall only apply to the Proceeds of the Loan made under Section 2.1 of this Agreement.

"Cash Collateral" has the meaning set forth in Bankruptcy Code § 363(a).

"Chattel Paper" means all "chattel paper" as defined in Article 9 of the UCC including, without limitation, "electronic chattel paper" or "tangible chattel paper," as each term is defined in Article 9 of the UCC.

"Closing Date" means the date on which the conditions precedent to the making of the Loan set forth in Section 4.1 have been satisfied or waived by Lenders.

"Collateral" shall mean all of Borrower's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Instruments, Inventory, Investment Property, and Supporting Obligations, including all Proceeds of the foregoing and all other collateral of Borrower acquired after the Effective Date, except that the following shall not constitute Collateral: any rights, claims, demands, or causes of action held by the Borrower's

3

bankruptcy estate under Section 544, 545, 547, 548, 549, 550, 553, 723(a), or 724(a) of the Bankruptcy Code, or the proceeds of the foregoing.

"Collateral Records" means books, designs, Order, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and related data processing software and similar items that at any time evidence or contain information relating to any of the Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon.

"Collateral Support" means all Property (real or personal) assigned, hypothecated or otherwise securing any Collateral and shall include any security agreement or other agreement granting a Lien on such real or personal Property.

"Contractual Obligation" means as to Borrower, any provision of any security issued by Borrower or of any agreement, contract, instrument or undertaking to which Borrower is a party or by which it or any of the Property owned or leased by it is bound.

"Credit Agreements" means the note purchase agreements and promissory notes evidencing the Pre-Petition Loans which are described in the definitions of Senior Pre-Petition Loan and Junior Pre-Petition Loan below.

"Default" means any of the events specified in Section 7 that, but for the giving of any required notice by Lenders and/or the passing of time, would be an Event of Default hereunder.

"Deposit Account" means all "deposit accounts" as defined in Article 9 of the UCC.

"Documents" means all "documents" as defined in Article 9 of the UCC.

"Equipment" means (a) all "equipment" as defined in Article 9 of the UCC and (b) all accessions or additions thereto, all parts thereof, whether or not at any time of determination incorporated or installed therein or attached thereto, and all replacements therefor, wherever located, now or hereafter existing, including any fixtures.

"Event of Default" has the meaning set forth in Section 7.

"GAAP" means generally accepted accounting principles in the United States of America applied on a consistent basis.

"General Intangibles" means all "general intangibles" as defined in Article 9 of the UCC, including "payment intangibles" also as defined in Article 9 of the UCC and all Intellectual Property Rights.

"Goods" means all "goods" as defined in Article 9 of the UCC.

"Governmental Authority" means any Federal, state, county, municipal or other governmental department, commission, board, bureau, agency or instrumentality or any court, in each case whether of the United States of America or a foreign country.

4

"Indebtedness" means at any time (a) all indebtedness for money borrowed from Lenders under this Agreement, (b) all indebtedness of Borrower for the deferred purchase price of Property or services (other than Property, including Inventory, and services purchased, and trade payables, other expense accruals and deferred compensation items arising, in the ordinary course of business, including negotiated trade terms and Chapter 11 expense accruals), (c) all obligations of Borrower evidenced by notes, bonds, debentures or other similar instruments (other than performance, surety and appeal bonds arising in the ordinary course of business), (d) all indebtedness of Borrower created or arising under any conditional sale or other title retention agreement with respect to Property acquired by Borrower (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such Property), (e) all lease obligations of Borrower, and (f) all reimbursement, payment or similar obligations of Borrower, contingent or otherwise, under acceptance, letter of credit or similar facilities.

"Instruments" means all "instruments" as defined in Article 9 of the UCC.

"Intellectual Property Rights" means all actual or prospective rights arising in connection with any intellectual property or other proprietary rights, including all rights arising in connection with copyrights, patents, service marks, trade dress, trade secrets, trademarks, trade names or mask works.

"Inventory" means all "inventory" as defined in Article 9 of the UCC.

"Investment" has the meaning set forth in Section 6.4.

"Investment Property" means all "investment property" as defined in Article 9 of the UCC.

"IRC" means the Internal Revenue Code of 1986, as amended from time to time.

"Junior Pre-Petition Loan" means the loan or loans made by one or more of the Lenders to Borrower pursuant to that certain Secured Subordinated Term Note Purchase and Exchange Agreement dated February 24, 2017, and the certain Secured Subordinated Term Notes dated February 24, 2017 in the original principal amounts of $1,305,223 and $978,918.

"Lien" means with respect to any Property, any mortgage, deed of trust, lien (statutory or other), pledge, charge, hypothecation, assignment, deposit arrangement, security interest, encumbrance or other security agreement or preferential arrangement of any kind or nature in respect of such Property. For purposes of this Agreement and the other Loan Documents, Borrower shall be deemed to own, subject to a Lien, any Property that it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement (other than an operating lease) relating to such Property.

"Loan" has the meaning given in Section 2.1.

"Loan Documents" means this Agreement and any other instrument or agreement executed and delivered in connection herewith.

Case: 17-31272    Doc# 106    Filed: 03/01/18    Entered: 03/01/18 15:35:34    Page 8 of 78

"Maximum Committed Amount" means $80,000.

"Maturity Date" means the first to occur of (a) the closing date as to the sale of Borrower's assets under § 363 of the Bankruptcy Code, or (b) April 15, 2018.

"Note" means the Promissory Note dated as of the Closing Date, in the stated principal amount of the Loan, made by Borrower and payable to the order of Lenders, in the form attached hereto as **Exhibit A**.

"Obligations" means (a) the principal of and interest on the Loan, (b) all other present and future, fixed or contingent, obligations and liabilities (monetary or otherwise) of Borrower to Lenders under this Agreement and the other Loan Documents, including, without limitation, all costs and expenses payable pursuant to Section 9.5.

"Order" means an order of the Bankruptcy Court entered in the Bankruptcy Case, including any Approval Order.

"Permitted Liens" means Liens permitted to exist under Section 6.1.

"Pre-Petition Loans" means, collectively, the Senior Pre-Petition Loan and the Junior Pre-Petition Loan,pursuant to which Lenders extended loans to Borrower pursuant to the terms stated therein, which loans are secured by Security Agreements and Intellectual Property Security Agreements, UCC Financing Statements and U.S. Patent and Trademark Office filings.

"Proceeds" means (a) all "proceeds" as defined in Article 9 of the UCC, (b) payments or distributions made with respect to any Property, and (c) whatever is receivable or received when Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of whether such disposition is voluntary or involuntary.

"Property" means any right or interest in or to property of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible.

"Requirements of Law" means as to Borrower, the certificate of incorporation and by-laws or other organizational or governing documents of Borrower, and any law, treaty, rule or regulation or determination of an arbitration or a court or other Governmental Authority, in each case applicable to or binding upon Borrower or any of its Property or to which Borrower or any of its Property is subject.

"Sale Agreement" means that certain Asset Purchase Agreement by and between Borrower and Lenders which is being negotiated between Borrower and Lenders and, if agreed to by the parties, will subject to Bankruptcy Court approval.

"Senior Pre-Petition Loan" means the loan or loans made by one or more of the Lenders to Borrower pursuant to that certain Secured Subordinated Term Note Purchase Agreement dated February 24, 2017, and the Secured Subordinated Term Notes dated February 24, 2017 in the original principal amounts of $2,500,000, $100,000 and $100,000.

6

"Superpriority Claim" means an allowed administrative expense claim in the Bankruptcy Case for all sums due or to become due under this Agreement and the other Loan Documents, with superpriority (subject only to the Carve-Out Expenses) over all administrative expenses specified in the Bankruptcy Code, including without limitation §§ 503(b), 507(b) or 546(c) of the Bankruptcy Code, pursuant to § 364(c)(1) of the Bankruptcy Code.

"Supporting Obligation" means a "supporting obligation" as defined in Article 9 of the UCC.

"Termination Date" means the earliest to occur of (a) the Maturity Date, (b) the date of indefeasible prepayment in full by Borrower of the Loan, (c) the date of the consummation of the sale of any material portion of the Collateral outside the ordinary course of business pursuant to Bankruptcy Code § 363, (d) the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or (e) Lenders' acceleration of the Loan upon the occurrence of an Event of Default hereunder.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of Delaware or, when the context implies, the Uniform Commercial Code as in effect from time to time in any other applicable jurisdiction.

    1.2.    <u>Terms Generally</u>.  The definitions in Section 1.1 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. All references herein to Sections shall be deemed references to Sections and subsections of this Agreement unless the context shall otherwise require. The use herein of the word "include" or "including" when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to" or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that are within the broadest possible scope of such general statement, term or matter.

    1.3.    <u>Computation of Time</u>.  In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including," the words "to" and "until" each mean "to but excluding" and the word "through" means "to and including."

    1.4.    <u>Recitals</u>.  The Recitals are incorporated herein by reference as a substantive part of this Agreement.

**SECTION 2.**
**AMOUNT AND TERMS OF LOAN**

    2.1.    <u>Loan</u>.  Lenders agree, subject to the terms and conditions of this Agreement, to make advances, or cause advances to be made, to Borrower from time to time from and after the date that all of the conditions set forth in Section 4.1 are satisfied to and until the Termination Date in an amount not in excess of the Maximum Committed Amount. All advances under this Section 2.1 shall be collectively referred to herein as the "<u>Loan</u>". Borrower's obligation to repay the Loan shall be secured by the Collateral.

7

2.2.    Procedure for Requesting Loan.  Borrower shall request advances of the Loan not later than 11:00 a.m. on the Business Day prior to the day on which the advance is to be made. Each request that conforms to the terms of this Agreement shall be effective upon receipt by Lenders, shall be in writing or by telephone or telecopy transmission, and shall be confirmed in writing by Borrower if so requested by Lenders.  Borrower may request funds up to the amount due for the approved expenses set forth in the Approved Budget for the seven (7) calendar day period following the request.

2.3.    Use of Proceeds.  The proceeds of the Loan shall be used solely for working capital and administrative expense purposes of Borrower in accordance with the Approved Budget and the terms of the Loan Documents.

2.4.    Interest.  The outstanding principal amount of the Loan shall bear interest at a fixed rate of 3.25% per annum, non-compounding, calculated on the basis of a three hundred sixty (360) day year, applied to the actual number of days elapsed, which interest shall be payable in arrears on the Termination Date, all as more particularly set forth in the Note.

2.5.    Repayment of Loan.  Borrower hereby unconditionally promises to pay to Lenders the principal amount of the Loan, together with all accrued and unpaid interest thereon, on the Termination Date.  The Loan may be prepaid in full or in part at any time without penalty. Amounts repaid may not be reborrowed.

2.6.    Priority and Lien.  Borrower hereby covenants, represents and warrants that, upon entry of the Approval Order (i) pursuant to Bankruptcy Code § 364(c)(1), the Loan shall at all times constitute allowed Superpriority Claims in the Bankruptcy Case, and (ii) pursuant to Bankruptcy Code § 362(c)(2) and 364(d) to the extent necessary, the Loan shall be secured by a first priority perfected Lien on all of Borrower's Collateral, subject only to Permitted Liens and the Carve-Out Expenses.

2.7.    Security Interest.  To secure the Obligations, Borrower hereby grants to Lenders a Lien on and security interest in all of Borrower's Collateral, subject to the payment of the Carve-Out Expenses.  Borrower acknowledges that, pursuant to the Approval Order, the Liens granted in favor of Lender in all of Borrower's Collateral shall be perfected without the recordation of any UCC financing statements, notices of Lien or other instruments of mortgage or assignment. Notwithstanding the foregoing, Borrower shall authorize and/or execute such financing statements, instruments and notices as may be reasonably requested by Lenders.

2.8.    Payment of Obligations.  Upon the Termination Date, Lenders shall be entitled to immediate payment of all Obligations without further application to or order of the Bankruptcy Court.

2.9.    Reserved.

2.10.    Carve Out Expenses.  The Lenders' liens, security interests and priority administrative expense claims, if any, shall, in each instance, be subject to the right of payment of the Carve Out Expenses to the extent set forth in the Approval Order.

Case: 17-31272    Doc# 106    Filed: 03/01/18    Entered: 03/01/18 15:35:34    Page 11 of 78

2.11.   Use of Cash Collateral.  In connection with the making of this Loan, the Lenders agree that Borrower may use Lenders' Cash Collateral for the items listed in the Approved Budget.

## SECTION 3.
## REPRESENTATIONS AND WARRANTIES

To induce Lenders to make the Loan hereunder, Borrower hereby represents and warrants as follows:

3.1.   Organization and Authority.  Borrower (a) is a limited liability company duly organized and validly existing and in good standing under the laws of Delaware; (b) subject to the entry by the Bankruptcy Court of the Approval Order, has the requisite corporate power and authority to effect the transactions contemplated hereby and by the other Loan Documents, and (c) subject to the entry by the Bankruptcy Court of the Approval Order, has all requisite corporate power and authority and the legal right to own, pledge, mortgage and operate its Properties, to lease the Properties it operates as lessee and to conduct its business as now or currently proposed to be conducted.

3.2.   Due Execution; Binding Obligation.  Upon entry by the Bankruptcy Court of the Approval Order, the execution, delivery and performance by Borrower of the other Loan Documents, this Agreement is, and each of the other Loan Documents to which Borrower is or will be a party, when delivered hereunder or thereunder, will be, a legal, valid and binding obligation, enforceable in accordance with its terms and the Approval Order, except to the extent that the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and by equitable principles (regardless of whether enforcement is sought in equity or at law).

3.3.   No Conflict. The execution, delivery and performance of each Loan Document to which it is a party by Borrower and each of the transactions contemplated thereby do not and will not (i) conflict with or violate Borrower's organizational documents, or (ii) conflict with, result in a breach of or constitute (with or without notice or lapse of time or both) a default under any material Requirement of Law or material Contractual Obligation of Borrower, or require termination of any material Contractual Obligation, or (iii) result in or require the creation or imposition of any Lien whatsoever upon any of the properties or assets of Borrower (other than Liens of Lenders or Permitted Liens), or (iv) require any approval or consent of any Person under any Contractual Obligation of Borrower.

3.4.   Approved Budget. The Approved Budget: (i) sets forth the amount allocated to each line item during the period covered by such Approved Budget and the total amounts which are anticipated to be incurred through the end of such period; (ii) is consistent in all material respects with the provisions of the Loan Documents and the Approval Order; and (iii) has been prepared in good faith, and to the best knowledge of Borrower, fairly represents Borrower's current expectation as to the matters covered thereby.

9

3.5.    Title to Borrower's Assets.  Borrower owns and has on the date hereof good and marketable title to, or a right or license to use, the Collateral (subject only to pre-existing liens) to the extent necessary for the operation and conduct of its business.

3.6.    Insurance.  All policies of insurance of any kind or nature owned by or issued to Borrower, including, without limitation, policies of life, fire, theft, product liability, public liability, property damage, other casualty, employee fidelity, workers' compensation, employee health and welfare, title, property and liability insurance, are in full force and effect.

**SECTION 4.**
**CONDITIONS PRECEDENT**

4.1.    Conditions to Advances of the Loan.  The obligation of Lenders to make the Loan is subject to the satisfaction, immediately prior to or currently with the making of each advance of the Loan, of the following conditions precedent:

(a)    Loan Documents.  Lenders shall have received (i) this Agreement, executed and delivered by a duly authorized officer of Borrower, (ii) the executed Loan Documents conforming to the requirements hereof, (iii) all Schedules identified herein; and (iv) and such other documents, including, without limitation, security agreements, pledge agreements and other related collateral documents, that are customary in such transactions.

(b)    Approval Order.  Lenders shall have received a copy of the Approval Order approving this Agreement and the other Loan Documents and granting the Superpriority Claim status and Liens described herein and finding that Lenders are extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e), which Approval Order (i) shall be in form and substance satisfactory to Lenders, (ii) shall have been entered upon an application of Borrower in form and substance satisfactory to Lenders, (iii) shall be in full force and effect, and (iv) shall not have been stayed, reversed, vacated, rescinded, modified or amended in any material respect or be the subject of a pending appeal.  Subject to the Challenge Provisions below, Borrower stipulates and agrees that the Senior Pre-Petition Loan is valid, secured and perfected, and outstanding in an amount not less than $4,355,178 as of March 1, 2018 (the "Interim Stipulated Amount").  The Interim Stipulated Amount is without prejudice to Lenders asserting the full amount of all the Pre-Petition Loans, which rights are fully reserved, the Borrower's right to contest any amount in excess of the Interim Stipulated Amount, and the Challenge Provisions below.  Subject to the Challenge Provisions below, Lenders shall have the absolute and undisputed right, exercisable at Lenders' sole and absolute discretion, to credit bid up to the Interim Stipulated Amount for the purchase of some or all of Borrower's assets.  Subject to the Challenge Provisions below, Lenders shall have the further right to seek to credit bid all amounts in excess of the Interim Stipulated Amount up to and including the full amount of the Pre-Petition Loans, including without limitation all accrued interest, charges and legal fees, and Borrower shall have the right to contest any such credit bid rights in excess of the Interim Stipulated Amount.  Borrower, for itself and on behalf of the Borrower's bankruptcy estate, hereby waives any claims against Lenders that might be asserted under Section 506(c) of the Bankruptcy Code.  Borrower and any subsequently appointed Committee may challenge the Lenders' pre-petition claims only through the following provisions (the "Challenge Provisions").  Borrower or any Committee may challenge the Interim Stipulated Amount, bring any affirmative

10

action against Lenders for damages, or bring affirmative actions in connection with the Senior Pre-Petition Loan to avoid payments or the grants of security interests issued in connection with the Senior Pre-Petition Loan, or to subordinate all or part of Lenders' claims against Borrower based on the Senior Pre-Petition Loan,within twenty-one (21) days of the filing of a motion to approve this Agreement.  If no objection or action is filed in the Bankruptcy Court by either the Borrower or any Committee, then all claims and causes of action against Lenders that could be raised by Borrower pursuant to the Challenge Provisions above shall be unequivocally and irrevocably waived by Borrower, any Committee, the Borrower's bankruptcy estate, and any successor in interest to the foregoing. The Approval Order will specifically set forth and approve all of the foregoing provisions and agreements.  For the avoidance of doubt, the Challenge Provisions shall not apply to any claims for the avoidance of any payments or the grants of security interests in connection with the Junior Pre-Petition Loan, to any actions by Borrower to subordinate all or a portion of the Junior Pre-Petition Loan, or to object to a claim asserted by Lenders in Borrower's bankruptcy case on account of the Junior Pre-Petition Loan on any basis.

(c) <u>Representations</u>.  All representations contained in or pursuant to this Agreement and the other Loan Documents, or otherwise made in writing in connection herewith or therewith, shall be true and correct in all material respects on and as of the date of each Loan hereunder with the same effect as if made on and as of such date (unless stated to relate to a specific earlier date, in which case, such representations shall be true and correct in all material respects as of such earlier date).

(d) <u>Designation as Stalking Horse Bidder by Borrower</u>.        Borrower shall designate Lenders as its stalking horse for the sale of Borrower's assets if Borrower and Lender are able to agree on a Sale Agreement and submit same to the Bankruptcy Court for approval.

(e) <u>No Challenge. No challenge shall have been filed by any party against Lenders by the deadline for filing Challenge Provisions.</u>

**SECTION 5.**
**AFFIRMATIVE COVENANTS**

Unless otherwise agreed in writing by Lenders, the Borrower shall:

5.1.   <u>Existence</u>.  Borrower shall at all times maintain its organizational existence and preserve and keep in full force and effect its rights and franchises, unless the failure to maintain such rights and franchises would not have a material adverse effect.

5.2.   <u>Financial Statements, Etc</u>.  Until the Termination Date, deliver to Lenders not later than three (3) days after the conclusion of each weekly period set forth in the Budget, an "actual to budget" report for all cash receipts and disbursements for such preceding Budget week.  Borrower shall provide any other reporting reasonably requested by the Lenders.

5.3.   <u>Maintenance of Borrower's Collateral; Insurance</u>.  Keep all of Borrower's Collateral in as good of condition as it was at the time of the filing of the Bankruptcy Case, subject to ordinary wear and tear and damage by casualty or governmental taking or action in lieu thereof, except where the failure to do so could not reasonably be expected to have a material adverse effect; maintain all insurance policies in effect as of the Effective Date, which

11

policies shall name Lenders as an additional insured and the loss payee for the proceeds of any such policy; and furnish to Lenders, upon written request, certificates evidencing such insurance in form and substance acceptable to Lenders.

5.4.    Inspection of Books and Records; Discussions.  Borrower shall keep proper books of records and accounts and permit any authorized representative(s) designated by Lenders to visit and inspect any Borrower property, including its financial and accounting records.

5.5.    Notices.  Promptly, and in any event within seven (7) Business Days after Borrower acquires knowledge thereof, give notice to Lenders of: (a) the occurrence of any Default or Event of Default, (b) the occurrence of any default or event of default under any post-Order for Relief Date Contractual Obligation of Borrower, (c) litigation, investigation or proceeding other than proceedings in the Bankruptcy Case which may exist at any time between Borrower and any Governmental Authority, or (d) notice of any action needed or any required filings for any intellectual property rights of the Borrower.

5.6.    Further Assurances.  At the cost and expense of Borrower, execute and file all such further documents and instruments, and perform such other acts, as Lenders may reasonably determine are necessary or advisable to maintain the Liens granted to Lenders in connection with this Agreement, the other Loan Documents and the Approval Order and to maintain the priority of such Liens purported to be granted pursuant to this Agreement and the Approval Order.

5.7.    Approval of Agreement.  Use commercially reasonable business efforts to obtain approval from the Bankruptcy Court of this Agreement.

5.8.    Approved Budget.  The proceeds of the Loan shall only be used for the purposes set forth in the Approved Budget.  Borrower may not modify allocations between line items within the Approved Budget without the prior written consent of Lenders.

(a)    Variances.  Subject to the Budget Variances (defined below), the expenditures authorized in the Approved Budget shall be adhered to on a period basis and a cumulative basis, provided, however, that unused expenditures shall carry forward to successive weekly budget periods on a line-by-line basis.  It is contemplated that the amount of professional fees may fluctuate from time to time and therefore such amounts may exceed the weekly budgeted allocations, but in no event shall Borrower use loan proceeds or the Collateral to pay fees in excess of the aggregate amounts set forth in the Budget for that line item, subject to Budget Variances.

(b)    Except as otherwise agreed upon in writing by and between Borrower and Lenders, actual amounts for the overall weekly budget set forth in the Approved Budget may exceed the budgeted allocation by as much as ten (10%) percent during any given week ("**Budget Variances**").

## SECTION 6.
## NEGATIVE COVENANTS

Borrower shall not, without the written consent of Lenders:

6.1.    Limitation on Liens.  Other than as to the Carve-Out Expenses, create, incur, assume or suffer to exist any senior or equal priority Lien upon any of their respective Properties, whether now owned or hereafter acquired, except for the following (the "**Permitted Liens**"):

(a)    carriers', warehousemen's, mechanics', materialmen's, repairmen's, landlords' or other similar Liens arising in the ordinary course of business which are not overdue or which are being contested in good faith by appropriate proceedings;

(b)    pledges or deposits in connection with workers' compensation, general liability insurance and/or claims or unemployment insurance;

(c)    Liens imposed by any Governmental Authority for taxes, assessments or charges not yet due or that are being contested in good faith and by appropriate proceedings if, unless the amount thereof is not material with respect to its financial condition, adequate reserves with respect thereto are maintained on the books of Borrower in accordance with GAAP, **provided** the same have no priority over any of Lenders' security interests;

(d)    Liens created pursuant to this Agreement and the Approval Order; and

(e)    Any extension, renewal or replacement of any of the foregoing, provided that the Liens permitted by this paragraph shall not extend to or cover any additional Indebtedness or Property (other than substitution of like Property).

6.2.    Limitation on Guaranty Obligations.  Assume, guarantee, endorse or otherwise become directly or contingently liable in connection with any obligations of any other person, except the endorsement of negotiable instruments by Borrower for deposit or collection or similar transactions in the ordinary course of business.

6.3.    Prohibition on Fundamental Changes.  Enter into any acquisition, merger, or consolidation, other than a sale or similar transaction approved by Lenders.

6.4.    Limitation on Investments, Loan and Advances.  Make any advance, loan, extension of credit or capital contribution to, or purchase any stock, bonds, notes, debentures or other securities of or any assets constituting a business unit of or make any other investment (each, an "Investment"), except:

(a)    Investments in cash equivalents;

(b)    Investments existing on the Order for Relief Date;

(c)    extensions of trade credit and prepaid expenses made in the ordinary course of business; and

(d)    Investments received in connection with the creation and collection of Accounts in the ordinary course of business.

6.5.    Chapter 11 Claims; Payment of Claims.  Incur, create, assume, suffer to exist or permit any other Superpriority Claim which is *pari passu* with or senior to the claims of Lenders

13

granted pursuant to this Agreement and the Approval Order, or make any payments of obligations as to the period prior to the Order for Relief Date other than (a) as permitted under the Approval Order, (b) as otherwise permitted or required under this Agreement or (c) required pursuant to the Sale Agreement.

## SECTION 7.
## EVENTS OF DEFAULT

7.1.   <u>Event of Default</u>.  If one or more of the following events (each an "**Event of Default**") shall occur and be continuing:

(a)   Borrower shall fail to (i) pay any principal of or interest on the Loan when due in accordance with the terms thereof or hereof, or (ii) pay any other amount payable hereunder or under any other Loan Document, within two (2) Business Days after any such amount becomes due in accordance with the terms thereof or hereof; or

(b)   Borrower shall default in the observance or performance of any covenant or other agreement contained in this Agreement (other than as provided in subsections (a) and (b) of this Section), and such default shall continue unremedied for a period of ten (10) days after Lenders provides written notice of such default to Borrower; or

(c)   The Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; or

(d)   An order of the Bankruptcy Court shall be entered granting another Superpriority Claim or Lien *pari passu* with or senior to that granted to Lenders pursuant to this Agreement and the Approval Order, or an order of a court of competent jurisdiction shall be entered reversing, staying, vacating or rescinding the Approval Order, or amending, supplementing or otherwise modifying either the Approval Order or this Agreement without the consent of Lenders; or

(e)   Borrower shall make any payments relating to obligations for the period prior to the Order for Relief Date other than (i) as permitted under the Approval Order or the Approved Budget, (ii) as otherwise permitted under this Agreement, or (iii) as required by an order of the Bankruptcy Court; or

(f)   The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against Borrower's assets or an order under Section 506(c) of the Bankruptcy Code awarding recovery of any costs and expenses of the Collateral; or

(g)   An order is entered over the objection of Lenders permitting the use of Cash Collateral or granting an administrative claim in the Bankruptcy Case that is equal or superior to the administrative claim granted to Lenders pursuant to the Approval Order; or

(h)   The entry of the Approval Order shall not have occurred within thirty-five (35) days after the execution of this Agreement; or

(i)        The commencement of any proceeding seeking, or otherwise consenting to, (i) the invalidation, subordination or other challenging of the Superpriority Claims and Liens granted to secure the Obligations, or (ii) any relief under Bankruptcy Code § 506(c) with respect to any Collateral; or

(j)        Subject to Bankruptcy Code § 365, Borrower shall fail to obtain, maintain or comply in all material respects with any order, consent, approval, license, authorization, or validation of, or filing, recording or registration with, or exemption by, any Governmental Authority; or

(k)        This Agreement, the other Loan Documents and the Approval Order shall, for any reason, cease to create a valid Lien on any of the Collateral purported to be covered thereby or such Lien shall cease to be a perfected Lien having the priority provided herein pursuant to Bankruptcy Code § 364 against Borrower, or Borrower shall so allege in any pleading filed in any court, or any material provision of any Loan Document shall, for any reason, cease to be valid and binding on Borrower.

7.2.    <u>Remedies</u>.  At any time during the continuance of an Event of Default, Lenders may take one or more of the following actions, at the same or different times: (i) after obtaining relief from the automatic stay, which relief may be sought and obtained on shortened notice, declare the Loan then outstanding to be forthwith due and payable, whereupon the principal of the Loan together with accrued interest thereon and all other Obligations of Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; (ii) after obtaining relief from the automatic stay, set off amounts in any accounts of Borrower and apply such amounts to the Obligations; and (iii) after obtaining relief from the automatic stay, exercise any and all remedies under this Agreement, the other Loan Documents, the Approval Order and applicable law available to Lenders.

## SECTION 8.
## ADDITIONAL REMEDIES; APPLICATION OF PROCEEDS

8.1.    <u>Remedies; Obtaining the Collateral Upon Default</u>.  Upon the occurrence and during the continuance of an Event of Default, and after obtaining relief from the automatic stay, Lenders shall have all rights as provided by law and this Agreement to enforce all of its rights and remedies.

8.2.    <u>Remedies; Disposition of the Collateral</u>.  Upon the occurrence and during the continuance of an Event of Default, and after obtaining relief from the automatic stay to the extent required by the Approval Order, any Collateral may be sold, assigned, leased or otherwise disposed of under one or more contracts or as an entirety, and without the necessity of gathering at the place of sale the Property to be sold, and in general in such manner, at such time or times, at such place or places and on such terms as Lenders may do so in compliance with any Requirements of Law.

Case: 17-31272   Doc# 106   Filed: 03/01/18   Entered: 03/01/18 15:35:34   Page 18 of 78

8.3.    <u>Application of Proceeds</u>.  Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document, any payment by Borrower on account of principal of and interest on the Loan and any Proceeds arising out of any realization (including after foreclosure) upon the Collateral shall be applied as follows: first, to the payment in full of all costs and expenses (including without limitation, reasonable attorney fees and disbursements) paid or incurred by Lenders in connection with any such realization upon the Collateral, and second, to the payment in full of the Loan (including any accrued and unpaid interest thereon, and any fees and other Obligations in respect thereto). It is understood that Borrower shall remain liable to the extent of any deficiency between the amount of the Proceeds of the Collateral and the amount of the Obligations.

8.4.    <u>Remedies Cumulative</u>.    Each and every right, power and remedy hereby specifically given to Lenders shall be in addition to every other right power and remedy specifically given under this Agreement, the other Loan Documents, the Approval Order or now or hereafter existing at law or in equity, or by statute and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time or simultaneously and as often and in such order as may be deemed expedient by Lender. All such rights, powers and remedies shall be cumulative and the exercise or the beginning of exercise of one shall not be deemed a waiver of the right to exercise of any other or others. No delay or omission of Lenders in the exercise of any such right, power or remedy and no renewal or extension of any of the Obligations shall impair any such right, power or remedy or shall be construed to be a waiver of any Default or Event of Default or an acquiescence therein. In the event that Lenders shall bring any suit to enforce any of its rights hereunder and shall be entitled to judgment, then in such suit Lenders may recover reasonable expenses, including attorney fees, and the amounts thereof shall be included in such judgment.

## SECTION 9.
## MISCELLANEOUS

9.1.    <u>Amendments; Modifications and Waivers</u>.    Neither this Agreement, any other Loan Document to which Borrower is a party, nor any terms hereof or thereof may be amended, supplemented, modified or waived except in writing and with written approval by Lenders.  Any such amendment, supplement, modification or waiver shall apply to and shall be binding upon Borrower and Lenders and their permitted successors and assigns. In the case of any waiver, the parties shall be restored to their former positions and rights hereunder and under the other Loan Documents, and any Default or Event of Default waived shall be deemed to be cured and not continuing, but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon.

9.2.    <u>Notices</u>.  All notices, requests and other communications to any party hereunder shall be in writing (including facsimile transmission, email or similar wilting) and shall be given to such party at its address, facsimile number or email address set forth below or at such other address, facsimile number or email address as such party may specify from time to time for this purpose by notice to Lenders and Borrower.

16

Lenders:

Bill Snider
BroadOak Fund II, LLC
BroadOak Fund III, LLC
4800 Montgomery Lane, Suite 230
Bethesda, MD  20814
bsnider@broadoak.com

With a copy to:

Brent C. Strickland, Esquire
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Avenue, Suite 700W
Bethesda, MD  20814
bstrickland@wtplaw.com


Borrower:

Kyle Everett, Chief Restructuring Officer
Development Specialists, Inc.
150 Post Street, Suite 400
San Francisco, CA  94108
keverett@dsi.biz

With a copy to:

Barrett Marum, Esquire
SheppardMullin
379 Lytton Avenue
Palo Alto, CA 94301-1479
bmarum@sheppardmullin.com


        9.3.    No Waiver; Remedies Cumulative.  No failure or delay on the part of Lenders in exercising any right, power or privilege hereunder or under any other Loan Document and no course of dealing between Borrower and Lenders shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under any other Loan Document preclude any other or further exercise thereof of the exercise of any other right, power or privilege hereunder or thereunder. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which Lenders would otherwise have. No notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of Lenders to any other or further action in any circumstances without notice or demand.

17

9.4.  Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of Borrower, Lenders, and their respective successors and assigns, including any chapter 7 or chapter 11 trustee, except that Borrower may not assign or transfer any of their rights or obligations under this Agreement without the prior written consent of Lenders.

9.5.  Right of Set-off.  Subject to the giving of the notice as described in Section 7, notwithstanding the provisions of Bankruptcy Code § 362 and any other rights and remedies of Lenders now or hereafter granted under applicable law or otherwise, and not by way of limitation of any such rights, upon the occurrence and during the continuance of any Event of Default, Lenders are hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Borrower, any such notice being hereby expressly waived, to set off any other indebtedness or other obligation at any time held or owing by Lenders to or for the credit or the account of Borrower against and on account of the Obligations of Borrower to Lenders under this Agreement or under any of the other Loan Documents, and all other claims of any nature or description arising out of or connected with this Agreement or any other Loan Document, irrespective of whether or not Lenders shall have made any demand hereunder and although said Obligations, liabilities or claims, or any of them, shall be contingent or unmatured.

9.6.  Counterparts; Facsimile Signatures.  This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by all the parties.  This Agreement may be executed by facsimile or PDF/electronic copy and each signature thereto shall be and constitute an original signature, again as if the parties had executed a single original document.

9.7.  GOVERNING LAW.  THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF DELAWARE AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

9.8.  SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)  EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF THE BANKRUPTCY COURT.

(b)  EACH PARTY UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO IN CLAUSE (A) ABOVE AND ANY COUNTERCLAIM THEREIN.

9.9.  Effectiveness.  This Agreement shall become effective once (i) Lenders and Borrower shall have each signed a counterpart hereof and Borrower shall have delivered the same to Lenders and (ii) the Bankruptcy Court shall have entered the Approval Order.

9.10.   <u>Headings Descriptive</u>.  The headings of the several Sections and subsection, of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

9.11.   <u>Marshalling Recapture</u>.  Lenders shall be under no obligation to marshal any assets in favor of Borrower or any other party or against or in payment of any or all of the Obligations. To the extent Lenders receive any payment by or on behalf of Borrower, which payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to Borrower or their estates, trustees, receivers, custodians or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation or part thereof which has been paid, reduced or satisfied by the amount so repaid shall be reinstated by the amount so repaid and shall be included within the liabilities of Borrower to Lenders as of the date such initial payment, reduction or satisfaction occurred.

9.12.   <u>Severability</u>.  In case any provision in or obligation under this Agreement or the other Loan Documents shall be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

**Signatures on the following page**

19

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and the year first written.

**LENDERS:**

**BROADOAK FUND II, LLC**

By:_____
Name:_____
Title:_____

**BROADOAK FUND III, LLC**

By:_____
Name:_____
Title:_____


**BORROWER:**


**MEDCISION, LLC**


By:_____
Name:_____
Title:_____

20

## Exhibit A

PROMISSORY NOTE

$80,000.00                                              _____, 2018

      1.      <u>Interest</u>. Commencing as of the date hereof and continuing until repayment in full of all sums due hereunder, the unpaid Principal Sum shall bear interest at the rate of interest provided in the Loan Agreement.

      2.      <u>Payments and Maturity</u>. The unpaid Principal Sum, together with interest thereon at the rate provided above, shall be paid by Borrower on the Termination Date (as defined in the Loan Agreement). The Loan may be prepaid in full or in part at any time without penalty. Amounts repaid may not be reborrowed. In the event of the complete liquidation or winding up of Borrower, Lenders shall receive as repayment for the Loan and in preference to the holders of any preferred or common stock of Borrower, a liquidation preference as more particularly set forth in the Loan Agreement.

      3.      <u>Application and Place of Payments</u>. All payments made on account of this Note shall be applied first to the payment of accrued and unpaid interest then due hereunder, and the remainder, if any, shall be applied to the principal sum owed hereunder. All payments on account of this Note shall be paid in lawful money of the United States of America in immediately available funds to Lenders in accordance with the notice provisions set forth in the Loan Agreement or at such other times and places as Borrower and Lenders may mutually agree in writing.

      4.      <u>Prepayment</u>. Borrower may prepay the Principal Sum in whole or in part at any time without premium or penalty.

      5.      <u>Loan Agreement and Other Loan Documents</u>. This Note is the "Promissory Note" described in the Debtor-In-Possession Loan Agreement by and between Borrower and Lenders (as amended, modified, restated, substituted, extended, and renewed at any time and from time to time, the "**Loan Agreement**"). The indebtedness evidenced by this Note is included within the meaning of the term "**Obligations**" as defined in the Loan Agreement. This Note is one of the "**Loan Documents**" (as that term is defined in the Loan Agreement).

      6.      <u>Security</u>. This Note is secured as provided in the Loan Agreement.

      7.      <u>Events of Default</u>. The occurrence and continuance of any one or more of the following events beyond any applicable notice and cure period set forth in the Loan Documents shall constitute an event of default (individually, an "**Event of Default**" and collectively, the "**Events of Default**") under the terms of this Note:

      (a)      The failure of Borrower to pay to Lenders when due any principal or interest payable by Borrower to Lenders under the terms of this Note; or

      (b)      The occurrence of an event of default (as defined therein) under the Loan Agreement.

      8.      <u>Remedies</u>. At any time during the continuance of an Event of Default, Lenders may take one or more of the following actions, at the same or different times: (i) <u>after obtaining</u>

relief from the automatic stay, which relief may be sought and obtained on shortened notice, declare this Note to be forthwith due and payable, whereupon the principal of this Note together with accrued interest thereon, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; (ii) after obtaining relief from the automatic stay, set off amounts in any accounts of Borrower and apply such amounts to the Obligations; and (iii) after obtaining relief from the automatic stay, exercise any and all remedies under this Agreement, the other Loan Documents, the Approval Order (as defined in the Loan Agreement), and applicable law available to Lenders.

9. <u>Expenses</u>. Borrower promises to pay to Lenders on demand by Lenders all reasonable costs and expenses incurred by Lenders following an Event of Default in connection with the collection and enforcement of this Note, including, without limitation, reasonable attorneys' fees and expenses and all court costs.

10. <u>Notices</u>. Any notice, request, or demand to or upon Borrower or Lenders shall be deemed to have been properly given or made when delivered in accordance with the Loan Agreement.

11. <u>Miscellaneous</u>. Each right, power, and remedy of Lenders as provided for in this Note or any of the other Loan Documents, or now or hereafter existing under any applicable law or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Note or any of the other Loan Documents or now or hereafter existing under any applicable law, and the exercise or beginning of the exercise by Lenders of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by Lenders of any or all such other rights, powers, or remedies. No failure or delay by Lenders to insist upon the strict performance of any term, condition, covenant, or agreement of this Note or any of the other Loan Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude Lenders from exercising any such right, power, or remedy at a later time or times. By accepting payment after the due date of any amount payable under the terms of this Note, Lenders shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount. No course of dealing or conduct shall be effective to amend, modify, waive, release, or change any provisions of this Note.

12. <u>Partial Invalidity</u>. In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal, or unenforceable.

13. <u>Captions</u>. The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope or intent of this Note.

14. _Applicable Law_. Borrower acknowledges and agrees that this Note shall be governed by the laws of the State of California and, to the extent applicable, the Bankruptcy Code.

15. _Consent to Jurisdiction._ Each of the parties to this Note hereby irrevocably and unconditional submits itself and its property in any legal action or proceeding relating to this Note or any of the other Loan Documents, or for recognition and enforcement of any judgment in respect thereof, the non-exclusive general jurisdiction of the Bankruptcy Court.

16. _Service of Process_. Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon Borrower's Chief Restructuring Officer in California. Borrower irrevocably agrees that such service shall be deemed in every respect effective service of process upon Borrower in any such suit, action or proceeding, and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Borrower. Nothing in this Section shall affect the right of Lenders to serve process in any manner otherwise permitted by law or limit the right of Lenders otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions.

17. _WAIVER OF TRIAL BY JURY._

BORROWER AND LENDERS (BY THEIR ACCEPTANCE HEREOF) HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDERS MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS NOTE OR (B) THE LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.

THIS WAIVER IS KNOWINGLY, WILLINGLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered by its duly authorized officers, as of the day and year and the place first above written.

**MEDCISION, LLC**

By:_____
Name:
Title:

**EXHIBIT 2**

# DEBTOR-IN-POSSESSION LOAN AGREEMENT

This **DEBTOR-IN-POSSESSION LOAN AGREEMENT** (this "**Agreement**") is dated as of February ___, 2018, by and between MedCision, LLC, a Delaware limited liability company ("**Borrower**"), and BroadOak Fund II, LLC and BroadOak Fund III, LLC, both Delaware limited liability companies, in their individual capacities and as collateral agents (collectively "**Lenders**"). All capitalized terms have the definitions ascribed to them hereinbelow.

## RECITALS

**WHEREAS**, on December 20, 2017 (the "**Petition Date**"), Borrower commenced a Chapter 7 case (the "**Bankruptcy Case**"), by filing a voluntary petition (the "**Petition**") under 11 U.S.C. 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"); and

**WHEREAS**, on February 16, 2018 the Bankruptcy Court entered an order converting the Bankruptcy Case to a reorganization case under Chapter 11 of the Bankruptcy Code; and

**WHEREAS**, as of the Petition Date, Borrower was and remains indebted to Lenders for the repayment of the Pre-Petition Loans; and

**WHEREAS**, Borrower has requested that Lenders provide a senior secured super-primary debtor-in-possession loan to Borrower in the aggregate principal amount not to exceed $80,000, to be used for the purposes set forth herein; and

**WHEREAS**, Borrower desires to secure all Obligations under the Loan Documents by granting Lenders a first priority security interest and lien upon substantially all of its personal and real property; and

**WHEREAS**, Lenders are willing to lend funds to Borrower pursuant to the terms and conditions of this Agreement and the other Loan Documents;

**WHEREAS**, to provide security for and assure the repayment of the Loan and the payment and performance of the other Obligations (as defined herein) of Borrower hereunder and under the other Loan Documents (as defined herein), Borrower agrees that Lenders shall be entitled to the following, among other things as set forth in this Agreement and the Approval Order (each as more fully described herein):

       (a)       an allowed administrative expense claim in the Bankruptcy Case for all sums due or to become due under this Agreement and the other Loan Documents, with superpriority (subject only to the Carve-Out Expenses) over all administrative expenses specified in the Bankruptcy Code, including without limitation §§ 503(b), 507(b) or 546(c) of the Bankruptcy Code, pursuant to § 364(c)(1) of the Bankruptcy Code; and

(b)     pursuant to Bankruptcy Code § 364(c)(2) and (d)(1), Borrower shall grant to Lenders a first priority perfected Lien (as defined herein) on all of its right, title and interest in and to present and after-acquired Collateral (as defined herein), for the purpose of securing all sums due or outstanding to Lenders under this Agreement and the other Loan Documents, which Lien shall be senior to all claims and interests other than the Carve-Out Expenses.

**NOW**, **THEREFORE**, in consideration of the premises and mutual covenants contained herein, the parties hereto agree as follows:

## SECTION 1.
## DEFINITIONS

1.1.     Defined Terms.  As used in this Agreement, the following terms shall have the meanings specified below:

"Accounts" means all accounts, instruments, documents, chattel paper and general intangibles, whether secured or unsecured, whether now existing or hereafter created or arising, and whether or not specifically assigned to Lenders, including, without limitation, all "accounts" as defined in Article 9 of the UCC.

"Affiliate" means any person or entity which, directly or indirectly, is in control of, is controlled by or is under common control with, Borrower.  For purposes of this definition, "control" of Borrower means the power, directly or indirectly, either to (a) vote 5% or more of the securities having ordinary voting power for the election of directors or managers of Borrower, or (b) direct or cause the direction of the management and policies of Borrower whether through the ownership of voting securities, by contract or otherwise.

"Agreement" means this Debtor-in-Possession Loan Agreement, as amended, supplemented or otherwise modified from time to time.

"Allowed Professional Fees" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the filing of the Bankruptcy Case and (ii) allowed at any time by a final order of the Court pursuant to Sections 326, 328, 330 or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success or similar fees).

"Approval Order" means any order or Order of the Bankruptcy Court entered in the Bankruptcy Case in accordance with Bankruptcy Rule 4001(c)(2), granting interim or final approval of the transactions contemplated by this Agreement and the other Loan Documents and granting the Liens and the Superpriority Claim described herein in favor of Lenders, in form and substance satisfactory to Lenders, for which the time to file an appeal has expired, and no appeal or motion for rehearing has been filed, or if an appeal or motion for rehearing has been filed, but no stay has been entered.

"Approved Budget" means the aggregate, without duplication, of all items approved by Lenders and the Bankruptcy Court that are set forth in the budget attached to the Approval

Order, or otherwise provided to Lenders, which Approved Budget shall be certified by the Chief Restructuring Officer of Borrower as having been prepared in good faith based upon assumptions believed by Borrower to be reasonable at the time made.

"Bankruptcy Case" means collectively the bankruptcy case filed as to Borrower.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, or any other court having jurisdiction over the Bankruptcy Case from time to time.

"Bidding Procedures Order" has the definition set forth in the Sale Agreement.

"Business Day" means any day other than a Saturday, Sunday, or other day on which banks in the State of California are required or permitted to close.

"Carve-Out Expenses" shall mean, upon the declaration by Lenders of the occurrence of an Event of Default, each of Lenders' liens, claims and security interests in the Collateral and its Superpriority Claim, shall be subject only to the right of payment of the following expenses:

      a.      statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

      b.      fees payable to the Clerk of this Court;

      c.      subject to the terms and conditions of this Interim Order, Allowed Professional Fees (as defined below) incurred on or after the date of conversion of this case to chapter 11 by attorneys, accountants and other professionals retained by the Debtor and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code, provided that the aggregate amount of such Allowed Professional Fees included in the Carve Out Expenses pursuant to this clause shall not exceed $50,000. For the avoidance of doubt, the $50,000 cap in this subparagraph (c) shall only apply to the Proceeds of the Loan made under Section 2.1 of this Agreement.

"Cash Collateral" has the meaning set forth in Bankruptcy Code § 363(a).

"Chattel Paper" means all "chattel paper" as defined in Article 9 of the UCC including, without limitation, "electronic chattel paper" or "tangible chattel paper," as each term is defined in Article 9 of the UCC.

"Closing Date" means the date on which the conditions precedent to the making of the Loan set forth in Section 4.1 have been satisfied or waived by Lenders.

"Collateral" shall mean all of Borrower's Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Instruments, Inventory, Investment Property, and Supporting Obligations, including all Proceeds of the foregoing and all other collateral of Borrower acquired after the Effective Date, except that the following shall not

3

constitute Collateral: any rights, claims, demands, or causes of action held by the Borrower's bankruptcy estate under Section 544, 545, 547, 548, 549, 550, 553, 723(a), or 724(a) of the Bankruptcy Code, or the proceeds of the foregoing.

"Collateral Records" means books, designs, Order, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and related data processing software and similar items that at any time evidence or contain information relating to any of the Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon.

"Collateral Support" means all Property (real or personal) assigned, hypothecated or otherwise securing any Collateral and shall include any security agreement or other agreement granting a Lien on such real or personal Property.

"Contractual Obligation" means as to Borrower, any provision of any security issued by Borrower or of any agreement, contract, instrument or undertaking to which Borrower is a party or by which it or any of the Property owned or leased by it is bound.

"Credit Agreements" means the note purchase agreements and promissory notes evidencing the Pre-Petition Loans which are described in the definitions of Senior Pre-Petition Loan and Junior Pre-Petition Loan below.

"Default" means any of the events specified in Section 7 that, but for the giving of any required notice by Lenders and/or the passing of time, would be an Event of Default hereunder.

"Deposit Account" means all "deposit accounts" as defined in Article 9 of the UCC.

"Documents" means all "documents" as defined in Article 9 of the UCC.

"Equipment" means (a) all "equipment" as defined in Article 9 of the UCC and (b) all accessions or additions thereto, all parts thereof, whether or not at any time of determination incorporated or installed therein or attached thereto, and all replacements therefor, wherever located, now or hereafter existing, including any fixtures.

"Event of Default" has the meaning set forth in Section 7.

"GAAP" means generally accepted accounting principles in the United States of America applied on a consistent basis.

"General Intangibles" means all "general intangibles" as defined in Article 9 of the UCC, including "payment intangibles" also as defined in Article 9 of the UCC and all Intellectual Property Rights.

"Goods" means all "goods" as defined in Article 9 of the UCC.

4

"Governmental Authority" means any Federal, state, county, municipal or other governmental department, commission, board, bureau, agency or instrumentality or any court, in each case whether of the United States of America or a foreign country.

"Indebtedness" means at any time (a) all indebtedness for money borrowed from Lenders under this Agreement, (b) all indebtedness of Borrower for the deferred purchase price of Property or services (other than Property, including Inventory, and services purchased, and trade payables, other expense accruals and deferred compensation items arising, in the ordinary course of business, including negotiated trade terms and Chapter 11 expense accruals), (c) all obligations of Borrower evidenced by notes, bonds, debentures or other similar instruments (other than performance, surety and appeal bonds arising in the ordinary course of business), (d) all indebtedness of Borrower created or arising under any conditional sale or other title retention agreement with respect to Property acquired by Borrower (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such Property), (e) all lease obligations of Borrower, and (f) all reimbursement, payment or similar obligations of Borrower, contingent or otherwise, under acceptance, letter of credit or similar facilities.

"Instruments" means all "instruments" as defined in Article 9 of the UCC.

"Intellectual Property Rights" means all actual or prospective rights arising in connection with any intellectual property or other proprietary rights, including all rights arising in connection with copyrights, patents, service marks, trade dress, trade secrets, trademarks, trade names or mask works.

"Inventory" means all "inventory" as defined in Article 9 of the UCC.

"Investment" has the meaning set forth in Section 6.4.

"Investment Property" means all "investment property" as defined in Article 9 of the UCC.

"IRC" means the Internal Revenue Code of 1986, as amended from time to time.

"Junior Pre-Petition Loan" means the loan or loans made by one or more of the Lenders to Borrower pursuant to that certain Secured Subordinated Term Note Purchase and Exchange Agreement dated February 24, 2017, and the certain Secured Subordinated Term Notes dated February 24, 2017 in the original principal amounts of $1,305,223 and $978,918.

"Lien" means with respect to any Property, any mortgage, deed of trust, lien (statutory or other), pledge, charge, hypothecation, assignment, deposit arrangement, security interest, encumbrance or other security agreement or preferential arrangement of any kind or nature in respect of such Property. For purposes of this Agreement and the other Loan Documents, Borrower shall be deemed to own, subject to a Lien, any Property that it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement (other than an operating lease) relating to such Property.

"Loan" has the meaning given in Section 2.1.

5

"Loan Documents" means this Agreement and any other instrument or agreement executed and delivered in connection herewith.

"Maximum Committed Amount" means $80,000.

"Maturity Date" means the first to occur of (a) the closing date as to the sale of Borrower's assets under § 363 of the Bankruptcy Code, or (b) April 15, 2018.

"Note" means the Promissory Note dated as of the Closing Date, in the stated principal amount of the Loan, made by Borrower and payable to the order of Lenders, in the form attached hereto as **Exhibit A**.

"Obligations" means (a) the principal of and interest on the Loan, (b) all other present and future, fixed or contingent, obligations and liabilities (monetary or otherwise) of Borrower to Lenders under this Agreement and the other Loan Documents, including, without limitation, all costs and expenses payable pursuant to Section 9.5.

"Order" means an order of the Bankruptcy Court entered in the Bankruptcy Case, including any Approval Order.

"Permitted Liens" means Liens permitted to exist under Section 6.1.

"Pre-Petition Loans" means that certain Secured Subordinated Term Note Purchase Agreement dated February 24, 2017, the Secured Subordinated Term Notes dated February 24, 2017 in the original principals amounts of $2,500,000, $100,000 and $100,000, and also that Secured Subordinated Term Note Purchase and Exchange Agreement dated February 24, 2017, and the certain Secured Subordinated Term Notes dated February 24, 2017 in the original principal amounts of $1,305,223 and $978,918 (collectively the "Credit Agreements"), collectively, the Senior Pre-Petition Loan and the Junior Pre-Petition Loan, pursuant to which Lenders extended loans to Borrower pursuant to the terms stated therein, which loans are secured by Security Agreements and Intellectual Property Security Agreements, UCC Financing Statements and U.S. Patent and Trademark Office filings.

"Proceeds" means (a) all "proceeds" as defined in Article 9 of the UCC, (b) payments or distributions made with respect to any Property, and (c) whatever is receivable or received when Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of whether such disposition is voluntary or involuntary.

"Property" means any right or interest in or to property of any kind whatsoever, whether real, personal or mixed and whether tangible or intangible.

"Requirements of Law" means as to Borrower, the certificate of incorporation and by-laws or other organizational or governing documents of Borrower, and any law, treaty, rule or regulation or determination of an arbitration or a court or other Governmental Authority, in each case applicable to or binding upon Borrower or any of its Property or to which Borrower or any of its Property is subject.

6

"Sale Agreement" means that certain Asset Purchase Agreement by and between Borrower and Lenders which is being negotiated between Borrower and Lenders and, if agreed to by the parties, will subject to Bankruptcy Court approval.

"Senior Pre-Petition Loan" means the loan or loans made by one or more of the Lenders to Borrower pursuant to that certain Secured Subordinated Term Note Purchase Agreement dated February 24, 2017, and the Secured Subordinated Term Notes dated February 24, 2017 in the original principal amounts of $2,500,000, $100,000 and $100,000.

"Superpriority Claim" means an allowed administrative expense claim in the Bankruptcy Case for all sums due or to become due under this Agreement and the other Loan Documents, with superpriority (subject only to the Carve-Out Expenses) over all administrative expenses specified in the Bankruptcy Code, including without limitation §§ 503(b), 507(b) or 546(c) of the Bankruptcy Code, pursuant to § 364(c)(1) of the Bankruptcy Code.

"Supporting Obligation" means a "supporting obligation" as defined in Article 9 of the UCC.

"Termination Date" means the earliest to occur of (a) the Maturity Date, (b) the date of indefeasible prepayment in full by Borrower of the Loan, (c) the date of the consummation of the sale of any material portion of the Collateral outside the ordinary course of business pursuant to Bankruptcy Code § 363, (d) the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or (e) Lenders' acceleration of the Loan upon the occurrence of an Event of Default hereunder.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of Delaware or, when the context implies, the Uniform Commercial Code as in effect from time to time in any other applicable jurisdiction.

1.2. Terms Generally. The definitions in Section 1.1 shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. All references herein to Sections shall be deemed references to Sections and subsections of this Agreement unless the context shall otherwise require. The use herein of the word "include" or "including" when following any general statement, term or matter, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to" or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that are within the broadest possible scope of such general statement, term or matter.

1.3. Computation of Time. In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including," the words "to" and "until" each mean "to but excluding" and the word "through" means "to and including."

7

1.4.    Recitals.  The Recitals are incorporated herein by reference as a substantive part of this Agreement.

# SECTION 2.
# AMOUNT AND TERMS OF LOAN

2.1.    Loan.  Lenders agree, subject to the terms and conditions of this Agreement, to make advances, or cause advances to be made, to Borrower from time to time from and after the date that all of the conditions set forth in Section 4.1 are satisfied to and until the Termination Date in an amount not in excess of the Maximum Committed Amount.  All advances under this Section 2.1 shall be collectively referred to herein as the "Loan".  Borrower's obligation to repay the Loan shall be secured by the Collateral.

2.2.    Procedure for Requesting Loan.  Borrower shall request advances of the Loan not later than 11:00 a.m. on the Business Day prior to the day on which the advance is to be made. Each request that conforms to the terms of this Agreement shall be effective upon receipt by Lenders, shall be in writing or by telephone or telecopy transmission, and shall be confirmed in writing by Borrower if so requested by Lenders.  Borrower may request funds up to the amount due for the approved expenses set forth in the Approved Budget for the seven (7) calendar day period following the request.

2.3.    Use of Proceeds.  The proceeds of the Loan shall be used solely for working capital and administrative expense purposes of Borrower in accordance with the Approved Budget and the terms of the Loan Documents.

2.4.    Interest.  The outstanding principal amount of the Loan shall bear interest at a fixed rate of 3.25% per annum, non-compounding, calculated on the basis of a three hundred sixty (360) day year, applied to the actual number of days elapsed, which interest shall be payable in arrears on the Termination Date, all as more particularly set forth in the Note.

2.5.    Repayment of Loan.  Borrower hereby unconditionally promises to pay to Lenders the principal amount of the Loan, together with all accrued and unpaid interest thereon, on the Termination Date.  The Loan may be prepaid in full or in part at any time without penalty. Amounts repaid may not be reborrowed.

2.6.    Priority and Lien.  Borrower hereby covenants, represents and warrants that, upon entry of the Approval Order (i) pursuant to Bankruptcy Code § 364(c)(1), the Loan shall at all times constitute allowed Superpriority Claims in the Bankruptcy Case, and (ii) pursuant to Bankruptcy Code § 362(c)(2) and 364(d) to the extent necessary, the Loan shall be secured by a first priority perfected Lien on all of Borrower's Collateral, subject only to Permitted Liens and the Carve-Out Expenses.

2.7.    Security Interest.  To secure the Obligations, Borrower hereby grants to Lenders a Lien on and security interest in all of Borrower's Collateral, subject to the payment of the Carve-Out Expenses.  Borrower acknowledges that, pursuant to the Approval Order, the Liens granted in favor of Lender in all of Borrower's Collateral shall be perfected without the recordation of any UCC financing statements, notices of Lien or other instruments of mortgage or assignment.

8

Notwithstanding the foregoing, Borrower shall authorize and/or execute such financing statements, instruments and notices as may be reasonably requested by Lenders.

2.8.    Payment of Obligations.  Upon the Termination Date, Lenders shall be entitled to immediate payment of all Obligations without further application to or order of the Bankruptcy Court.

2.9.    Reserved.

2.10.    Carve Out Expenses.    The Lenders' liens, security interests and priority administrative expense claims, if any, shall, in each instance, be subject to the right of payment of the Carve Out Expenses to the extent set forth in the Approval Order.

2.11.    Use of Cash Collateral.  In connection with the making of this Loan, the Lenders agree that Borrower may use Lenders' Cash Collateral for the items listed in the Approved Budget.

**SECTION 3.**
**REPRESENTATIONS AND WARRANTIES**

To induce Lenders to make the Loan hereunder, Borrower hereby represents and warrants as follows:

3.1.    Organization and Authority.  Borrower (a) is a limited liability company duly organized and validly existing and in good standing under the laws of Delaware; (b) subject to the entry by the Bankruptcy Court of the Approval Order, has the requisite corporate power and authority to effect the transactions contemplated hereby and by the other Loan Documents, and (c) subject to the entry by the Bankruptcy Court of the Approval Order, has all requisite corporate power and authority and the legal right to own, pledge, mortgage and operate its Properties, to lease the Properties it operates as lessee and to conduct its business as now or currently proposed to be conducted.

3.2.    Due Execution; Binding Obligation.  Upon entry by the Bankruptcy Court of the Approval Order, the execution, delivery and performance by Borrower of the other Loan Documents, this Agreement is, and each of the other Loan Documents to which Borrower is or will be a party, when delivered hereunder or thereunder, will be, a legal, valid and binding obligation, enforceable in accordance with its terms and the Approval Order, except to the extent that the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws generally affecting creditors' rights and by equitable principles (regardless of whether enforcement is sought in equity or at law).

3.3.    No Conflict. The execution, delivery and performance of each Loan Document to which it is a party by Borrower and each of the transactions contemplated thereby do not and will not (i) conflict with or violate Borrower's organizational documents, or (ii) conflict with, result in a breach of or constitute (with or without notice or lapse of time or both) a default under any material Requirement of Law or material Contractual Obligation of Borrower, or require termination of any material Contractual Obligation, or (iii) result in or require the creation or

9

imposition of any Lien whatsoever upon any of the properties or assets of Borrower (other than Liens of Lenders or Permitted Liens), or (iv) require any approval or consent of any Person under any Contractual Obligation of Borrower.

3.4.    Approved Budget.  The Approved Budget: (i) sets forth the amount allocated to each line item during the period covered by such Approved Budget and the total amounts which are anticipated to be incurred through the end of such period; (ii) is consistent in all material respects with the provisions of the Loan Documents and the Approval Order; and (iii) has been prepared in good faith, and to the best knowledge of Borrower, fairly represents Borrower's current expectation as to the matters covered thereby.

3.5.    Title to Borrower's Assets.  Borrower owns and has on the date hereof good and marketable title to, or a right or license to use, the Collateral (subject only to pre-existing liens) to the extent necessary for the operation and conduct of its business.

3.6.    Insurance.  All policies of insurance of any kind or nature owned by or issued to Borrower, including, without limitation, policies of life, fire, theft, product liability, public liability, property damage, other casualty, employee fidelity, workers' compensation, employee health and welfare, title, property and liability insurance, are in full force and effect.

## SECTION 4.
## CONDITIONS PRECEDENT

4.1.    Conditions to Advances of the Loan.  The obligation of Lenders to make the Loan is subject to the satisfaction, immediately prior to or currently with the making of each advance of the Loan, of the following conditions precedent:

(a)    Loan Documents.  Lenders shall have received (i) this Agreement, executed and delivered by a duly authorized officer of Borrower, (ii) the executed Loan Documents conforming to the requirements hereof, (iii) all Schedules identified herein; and (iv) and such other documents, including, without limitation, security agreements, pledge agreements and other related collateral documents, that are customary in such transactions.

(b)    Approval Order.  Lenders shall have received a copy of the Approval Order approving this Agreement and the other Loan Documents and granting the Superpriority Claim status and Liens described herein and finding that Lenders are extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e), which Approval Order (i) shall be in form and substance satisfactory to Lenders, (ii) shall have been entered upon an application of Borrower in form and substance satisfactory to Lenders, (iii) shall be in full force and effect, and (iv) shall not have been stayed, reversed, vacated, rescinded, modified or amended in any material respect or be the subject of a pending appeal.  Subject to the Challenge Provisions below, Borrower stipulates and agrees that the Senior Pre-Petition Loans areLoan is valid, secured and perfected, and outstanding in an amount not less than $4,393,9784,355,178 as of February 22March 1, 20172018 (the "Interim Stipulated Amount").  The Interim Stipulated Amount is without prejudice to Lenders asserting the full amount of all the Pre-Petition Loans, which rights are fully reserved, the Borrower's right to contest any amount in excess of the Interim Stipulated Amount, and the Challenge Provisions below.  Subject to the Challenge Provisions below,

10

Lenders shall have the absolute and undisputed right, exercisable at Lenders' sole and absolute discretion, to credit bid up to the Interim Stipulated Amount for the purchase of some or all of Borrower's assets. Subject to the Challenge Provisions below, Lenders shall have the further right to seek to credit bid all amounts in excess of the Interim Stipulated Amount up to and including the full amount of the Pre-Petition Loans, including without limitation all accrued interest, charges and legal fees, and Borrower shall have the right to contest any such credit bid rights in excess of the Interim Stipulated Amount. Borrower, for itself and on behalf of the Borrower's bankruptcy estate, hereby waives any claims against Lenders that might be asserted under Section 506(c) of the Bankruptcy Code. Borrower and any subsequently appointed Committee may challenge the Lenders' pre-petition claims only through the following provisions (the "Challenge Provisions"). Borrower or any Committee may challenge the Interim Stipulated Amount, bring any affirmative action against Lenders' pre-petition claims, including by bringing for damages, or bring affirmative actions in connection with the Senior Pre-Petition Loan to avoid payments or the grants of security interests issued in connection with the Senior Pre-Petition Loan, or to subordinate all or part of the pre-petition claimsLenders' claims against Borrower based on the Senior Pre-Petition Loan,within twenty-one (21) days of the filing of a motion to approve this Agreement. If no objection or action is filed in the Bankruptcy Court by either the Borrower or any Committee, then all claims and causes of action against Lenders that could be raised by Borrower pursuant to the Challenge Provisions above shall be unequivocally and irrevocably waived by Borrower, any Committee, the Borrower's bankruptcy estate, and any successor in interest to the foregoing. The Approval Order will specifically set forth and approve all of the foregoing provisions and agreements. For the avoidance of doubt, the Challenge Provisions shall not apply to any claims for the avoidance of any payments or the grants of security interests in connection with the Junior Pre-Petition Loan, to any actions by Borrower to subordinate all or a portion of the Junior Pre-Petition Loan, or to object to a claim asserted by Lenders in Borrower's bankruptcy case on account of the Junior Pre-Petition Loan on any basis.

(c)     Representations.     All representations contained in or pursuant to this Agreement and the other Loan Documents, or otherwise made in writing in connection herewith or therewith, shall be true and correct in all material respects on and as of the date of each Loan hereunder with the same effect as if made on and as of such date (unless stated to relate to a specific earlier date, in which case, such representations shall be true and correct in all material respects as of such earlier date).

(d)     Designation as Stalking Horse Bidder by Borrower.     Borrower shall designate Lenders as its stalking horse for the sale of Borrower's assets if Borrower and Lender are able to agree on a Sale Agreement and submit same to the Bankruptcy Court for approval.

(e)     No Challenge. No challenge shall have been filed by any party against Lenders by the deadline for filing Challenge Provisions.

## SECTION 5.
## AFFIRMATIVE COVENANTS

Unless otherwise agreed in writing by Lenders, the Borrower shall:

11

5.1.     Existence.  Borrower shall at all times maintain its organizational existence and preserve and keep in full force and effect its rights and franchises, unless the failure to maintain such rights and franchises would not have a material adverse effect.

5.2.     Financial Statements, Etc.  Until the Termination Date, deliver to Lenders not later than three (3) days after the conclusion of each weekly period set forth in the Budget, an "actual to budget" report for all cash receipts and disbursements for such preceding Budget week. Borrower shall provide any other reporting reasonably requested by the Lenders.

5.3.     Maintenance of Borrower's Collateral; Insurance.  Keep all of Borrower's Collateral in as good of condition as it was at the time of the filing of the Bankruptcy Case, subject to ordinary wear and tear and damage by casualty or governmental taking or action in lieu thereof, except where the failure to do so could not reasonably be expected to have a material adverse effect; maintain all insurance policies in effect as of the Effective Date, which policies shall name Lenders as an additional insured and the loss payee for the proceeds of any such policy; and furnish to Lenders, upon written request, certificates evidencing such insurance in form and substance acceptable to Lenders.

5.4.     Inspection of Books and Records; Discussions.  Borrower shall keep proper books of records and accounts and permit any authorized representative(s) designated by Lenders to visit and inspect any Borrower property, including its financial and accounting records.

5.5.     Notices.  Promptly, and in any event within seven (7) Business Days after Borrower acquires knowledge thereof, give notice to Lenders of: (a) the occurrence of any Default or Event of Default, (b) the occurrence of any default or event of default under any post-Order for Relief Date Contractual Obligation of Borrower, (c) litigation, investigation or proceeding other than proceedings in the Bankruptcy Case which may exist at any time between Borrower and any Governmental Authority, or (d) notice of any action needed or any required filings for any intellectual property rights of the Borrower.

5.6.     Further Assurances.  At the cost and expense of Borrower, execute and file all such further documents and instruments, and perform such other acts, as Lenders may reasonably determine are necessary or advisable to maintain the Liens granted to Lenders in connection with this Agreement, the other Loan Documents and the Approval Order and to maintain the priority of such Liens purported to be granted pursuant to this Agreement and the Approval Order.

5.7.     Approval of Agreement.  Use commercially reasonable business efforts to obtain approval from the Bankruptcy Court of this Agreement.

5.8.     Approved Budget.  The proceeds of the Loan shall only be used for the purposes set forth in the Approved Budget.  Borrower may not modify allocations between line items within the Approved Budget without the prior written consent of Lenders.

(a)     Variances.  Subject to the Budget Variances (defined below), the expenditures authorized in the Approved Budget shall be adhered to on a period basis and a cumulative basis, provided, however, that unused expenditures shall carry forward to successive weekly budget periods on a line-by-line basis.  It is contemplated that the amount of professional

12

fees may fluctuate from time to time and therefore such amounts may exceed the weekly budgeted allocations, but in no event shall Borrower use loan proceeds or the Collateral to pay fees in excess of the aggregate amounts set forth in the Budget for that line item, subject to Budget Variances.

(b)     Except as otherwise agreed upon in writing by and between Borrower and Lenders, actual amounts for the overall weekly budget set forth in the Approved Budget may exceed the budgeted allocation by as much as ten (10%) percent during any given week ("**Budget Variances**").

## SECTION 6.
## NEGATIVE COVENANTS

Borrower shall not, without the written consent of Lenders:

6.1.    Limitation on Liens.  Other than as to the Carve-Out Expenses, create, incur, assume or suffer to exist any senior or equal priority Lien upon any of their respective Properties, whether now owned or hereafter acquired, except for the following (the "**Permitted Liens**"):

(a)     carriers', warehousemen's, mechanics', materialmen's, repairmen's, landlords' or other similar Liens arising in the ordinary course of business which are not overdue or which are being contested in good faith by appropriate proceedings;

(b)     pledges or deposits in connection with workers' compensation, general liability insurance and/or claims or unemployment insurance;

(c)     Liens imposed by any Governmental Authority for taxes, assessments or charges not yet due or that are being contested in good faith and by appropriate proceedings if, unless the amount thereof is not material with respect to its financial condition, adequate reserves with respect thereto are maintained on the books of Borrower in accordance with GAAP, **provided** the same have no priority over any of Lenders' security interests;

(d)     Liens created pursuant to this Agreement and the Approval Order; and

(e)     Any extension, renewal or replacement of any of the foregoing, provided that the Liens permitted by this paragraph shall not extend to or cover any additional Indebtedness or Property (other than substitution of like Property).

6.2.    Limitation on Guaranty Obligations.  Assume, guarantee, endorse or otherwise become directly or contingently liable in connection with any obligations of any other person, except the endorsement of negotiable instruments by Borrower for deposit or collection or similar transactions in the ordinary course of business.

6.3.    Prohibition on Fundamental Changes.  Enter into any acquisition, merger, or consolidation, other than a sale or similar transaction approved by Lenders.

6.4.    Limitation on Investments, Loan and Advances.  Make any advance, loan, extension of credit or capital contribution to, or purchase any stock, bonds, notes, debentures or

13

other securities of or any assets constituting a business unit of or make any other investment (each, an "Investment"), except:

(a)      Investments in cash equivalents;

(b)      Investments existing on the Order for Relief Date;

(c)      extensions of trade credit and prepaid expenses made in the ordinary course of business; and

(d)      Investments received in connection with the creation and collection of Accounts in the ordinary course of business.

6.5.    Chapter 11 Claims; Payment of Claims.  Incur, create, assume, suffer to exist or permit any other Superpriority Claim which is *pari passu* with or senior to the claims of Lenders granted pursuant to this Agreement and the Approval Order, or make any payments of obligations as to the period prior to the Order for Relief Date other than (a) as permitted under the Approval Order, (b) as otherwise permitted or required under this Agreement or (c) required pursuant to the Sale Agreement.

## SECTION 7.
## EVENTS OF DEFAULT

7.1.    Event of Default.  If one or more of the following events (each an "**Event of Default**") shall occur and be continuing:

(a)      Borrower shall fail to (i) pay any principal of or interest on the Loan when due in accordance with the terms thereof or hereof, or (ii) pay any other amount payable hereunder or under any other Loan Document, within two (2) Business Days after any such amount becomes due in accordance with the terms thereof or hereof; or

(b)      Borrower shall default in the observance or performance of any covenant or other agreement contained in this Agreement (other than as provided in subsections (a) and (b) of this Section), and such default shall continue unremedied for a period of ten (10) days after Lenders provides written notice of such default to Borrower; or

(c)      The Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; or

(d)      An order of the Bankruptcy Court shall be entered granting another Superpriority Claim or Lien *pari passu* with or senior to that granted to Lenders pursuant to this Agreement and the Approval Order, or an order of a court of competent jurisdiction shall be entered reversing, staying, vacating or rescinding the Approval Order, or amending, supplementing or otherwise modifying either the Approval Order or this Agreement without the consent of Lenders; or

(e)      Borrower shall make any payments relating to obligations for the period prior to the Order for Relief Date other than (i) as permitted under the Approval Order or the

14

Approved Budget, (ii) as otherwise permitted under this Agreement, or (iii) as required by an order of the Bankruptcy Court; or

(f)    The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against Borrower's assets or an order under Section 506(c) of the Bankruptcy Code awarding recovery of any costs and expenses of the Collateral; or

(g)    An order is entered over the objection of Lenders permitting the use of Cash Collateral or granting an administrative claim in the Bankruptcy Case that is equal or superior to the administrative claim granted to Lenders pursuant to the Approval Order; or

(h)    The entry of the Approval Order shall not have occurred within thirty-five (35) days after the execution of this Agreement; or

(i)    The commencement of any proceeding seeking, or otherwise consenting to, (i) the invalidation, subordination or other challenging of the Superpriority Claims and Liens granted to secure the Obligations, or (ii) any relief under Bankruptcy Code § 506(c) with respect to any Collateral; or

(j)    Subject to Bankruptcy Code § 365, Borrower shall fail to obtain, maintain or comply in all material respects with any order, consent, approval, license, authorization, or validation of, or filing, recording or registration with, or exemption by, any Governmental Authority; or

(k)    This Agreement, the other Loan Documents and the Approval Order shall, for any reason, cease to create a valid Lien on any of the Collateral purported to be covered thereby or such Lien shall cease to be a perfected Lien having the priority provided herein pursuant to Bankruptcy Code § 364 against Borrower, or Borrower shall so allege in any pleading filed in any court, or any material provision of any Loan Document shall, for any reason, cease to be valid and binding on Borrower.

7.2.    Remedies.  At any time during the continuance of an Event of Default, Lenders may take one or more of the following actions, at the same or different times: (i) after obtaining relief from the automatic stay, which relief may be sought and obtained on shortened notice, declare the Loan then outstanding to be forthwith due and payable, whereupon the principal of the Loan together with accrued interest thereon and all other Obligations of Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; (ii) after obtaining relief from the automatic stay, set off amounts in any accounts of Borrower and apply such amounts to the Obligations; and (iii) after obtaining relief from the automatic stay, exercise any and all remedies under this Agreement, the other Loan Documents, the Approval Order and applicable law available to Lenders.

Case: 17-31272    Doc# 106    Filed: 03/01/18    Entered: 03/01/18 15:35:34    Page 42 of 78

## SECTION 8.
## ADDITIONAL REMEDIES; APPLICATION OF PROCEEDS

8.1.     <u>Remedies; Obtaining the Collateral Upon Default</u>.  Upon the occurrence and during the continuance of an Event of Default, and after obtaining relief from the automatic stay, Lenders shall have all rights as provided by law and this Agreement to enforce all of its rights and remedies.

8.2.     <u>Remedies; Disposition of the Collateral</u>.  Upon the occurrence and during the continuance of an Event of Default, and after obtaining relief from the automatic stay to the extent required by the Approval Order, any Collateral may be sold, assigned, leased or otherwise disposed of under one or more contracts or as an entirety, and without the necessity of gathering at the place of sale the Property to be sold, and in general in such manner, at such time or times, at such place or places and on such terms as Lenders may do so in compliance with any Requirements of Law.

8.3.     <u>Application of Proceeds</u>.  Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document, any payment by Borrower on account of principal of and interest on the Loan and any Proceeds arising out of any realization (including after foreclosure) upon the Collateral shall be applied as follows: first, to the payment in full of all costs and expenses (including without limitation, reasonable attorney fees and disbursements) paid or incurred by Lenders in connection with any such realization upon the Collateral, and second, to the payment in full of the Loan (including any accrued and unpaid interest thereon, and any fees and other Obligations in respect thereto). It is understood that Borrower shall remain liable to the extent of any deficiency between the amount of the Proceeds of the Collateral and the amount of the Obligations.

8.4.     <u>Remedies Cumulative</u>.  Each and every right, power and remedy hereby specifically given to Lenders shall be in addition to every other right power and remedy specifically given under this Agreement, the other Loan Documents, the Approval Order or now or hereafter existing at law or in equity, or by statute and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time or simultaneously and as often and in such order as may be deemed expedient by Lender. All such rights, powers and remedies shall be cumulative and the exercise or the beginning of exercise of one shall not be deemed a waiver of the right to exercise of any other or others. No delay or omission of Lenders in the exercise of any such right, power or remedy and no renewal or extension of any of the Obligations shall impair any such right, power or remedy or shall be construed to be a waiver of any Default or Event of Default or an acquiescence therein. In the event that Lenders shall bring any suit to enforce any of its rights hereunder and shall be entitled to judgment, then in such suit Lenders may recover reasonable expenses, including attorney fees, and the amounts thereof shall be included in such judgment.

## SECTION 9.
## MISCELLANEOUS

9.1.     <u>Amendments; Modifications and Waivers</u>.  Neither this Agreement, any other Loan Document to which Borrower is a party, nor any terms hereof or thereof may be amended,

16

supplemented, modified or waived except in writing and with written approval by Lenders. Any such amendment, supplement, modification or waiver shall apply to and shall be binding upon Borrower and Lenders and their permitted successors and assigns. In the case of any waiver, the parties shall be restored to their former positions and rights hereunder and under the other Loan Documents, and any Default or Event of Default waived shall be deemed to be cured and not continuing, but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon.

9.2.    Notices.  All notices, requests and other communications to any party hereunder shall be in writing (including facsimile transmission, email or similar wilting) and shall be given to such party at its address, facsimile number or email address set forth below or at such other address, facsimile number or email address as such party may specify from time to time for this purpose by notice to Lenders and Borrower.

Lenders:

Bill Snider
BroadOak Fund II, LLC
BroadOak Fund III, LLC
4800 Montgomery Lane, Suite 230
Bethesda, MD  20814
bsnider@broadoak.com

With a copy to:

Brent C. Strickland, Esquire
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Avenue, Suite 700W
Bethesda, MD  20814
bstrickland@wtplaw.com


Borrower:

Kyle Everett, Chief Restructuring Officer
Development Specialists, Inc.
150 Post Street, Suite 400
San Francisco, CA  94108
keverett@dsi.biz

With a copy to:

Barrett Marum, Esquire

17

SheppardMullin
379 Lytton Avenue
Palo Alto, CA 94301-1479
bmarum@sheppardmullin.com

9.3.    No Waiver; Remedies Cumulative.  No failure or delay on the part of Lenders in exercising any right, power or privilege hereunder or under any other Loan Document and no course of dealing between Borrower and Lenders shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under any other Loan Document preclude any other or further exercise thereof of the exercise of any other right, power or privilege hereunder or thereunder. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which Lenders would otherwise have. No notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of Lenders to any other or further action in any circumstances without notice or demand.

9.4.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of Borrower, Lenders, and their respective successors and assigns, including any chapter 7 or chapter 11 trustee, except that Borrower may not assign or transfer any of their rights or obligations under this Agreement without the prior written consent of Lenders.

9.5.    Right of Set-off.  Subject to the giving of the notice as described in Section 7, notwithstanding the provisions of Bankruptcy Code § 362 and any other rights and remedies of Lenders now or hereafter granted under applicable law or otherwise, and not by way of limitation of any such rights, upon the occurrence and during the continuance of any Event of Default, Lenders are hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Borrower, any such notice being hereby expressly waived, to set off any other indebtedness or other obligation at any time held or owing by Lenders to or for the credit or the account of Borrower against and on account of the Obligations of Borrower to Lenders under this Agreement or under any of the other Loan Documents, and all other claims of any nature or description arising out of or connected with this Agreement or any other Loan Document, irrespective of whether or not Lenders shall have made any demand hereunder and although said Obligations, liabilities or claims, or any of them, shall be contingent or unmatured.

9.6.    Counterparts; Facsimile Signatures.   This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by all the parties.  This Agreement may be executed by facsimile or PDF/electronic copy and each signature thereto shall be and constitute an original signature, again as if the parties had executed a single original document.

9.7.    GOVERNING LAW.  THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH,

Case: 17-31272    Doc# 106    Filed: 03/01/18    Entered: 03/01/18 15:35:34    Page 45 of 78

THE LAW OF THE STATE OF DELAWARE AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

      9.8.    SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

      (a)    EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF THE BANKRUPTCY COURT.

      (b)    EACH PARTY UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO IN CLAUSE (A) ABOVE AND ANY COUNTERCLAIM THEREIN.

      9.9.    Effectiveness.  This Agreement shall become effective once (i) Lenders and Borrower shall have each signed a counterpart hereof and Borrower shall have delivered the same to Lenders and (ii) the Bankruptcy Court shall have entered the Approval Order.

      9.10.    Headings Descriptive.  The headings of the several Sections and subsection, of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

      9.11.    Marshalling Recapture.  Lenders shall be under no obligation to marshal any assets in favor of Borrower or any other party or against or in payment of any or all of the Obligations. To the extent Lenders receive any payment by or on behalf of Borrower, which payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to Borrower or their estates, trustees, receivers, custodians or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation or part thereof which has been paid, reduced or satisfied by the amount so repaid shall be reinstated by the amount so repaid and shall be included within the liabilities of Borrower to Lenders as of the date such initial payment, reduction or satisfaction occurred.

      9.12.    Severability.  In case any provision in or obligation under this Agreement or the other Loan Documents shall be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

**Signatures on the following page**

19

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and the year first written.

**LENDERS:**

**BROADOAK FUND II, LLC**

By:_____
Name:_____
Title:_____

**BROADOAK FUND III, LLC**

By:_____
Name:_____
Title:_____

**BORROWER:**

**MEDCISION, LLC**

By:_____
Name:_____
Title:_____

20

## Exhibit A

### PROMISSORY NOTE

$80,000.00                                      _____, 2018

1.      Interest.  Commencing as of the date hereof and continuing until repayment in full of all sums due hereunder, the unpaid Principal Sum shall bear interest at the rate of interest provided in the Loan Agreement.

2.      Payments and Maturity.  The unpaid Principal Sum, together with interest thereon at the rate provided above, shall be paid by Borrower on the Termination Date (as defined in the Loan Agreement).  The Loan may be prepaid in full or in part at any time without penalty.  Amounts repaid may not be reborrowed.  In the event of the complete liquidation or winding up of Borrower, Lenders shall receive as repayment for the Loan and in preference to the holders of any preferred or common stock of Borrower, a liquidation preference as more particularly set forth in the Loan Agreement.

3.      Application and Place of Payments.  All payments made on account of this Note shall be applied first to the payment of accrued and unpaid interest then due hereunder, and the remainder, if any, shall be applied to the principal sum owed hereunder.  All payments on account of this Note shall be paid in lawful money of the United States of America in immediately available funds to Lenders in accordance with the notice provisions set forth in the Loan Agreement or at such other times and places as Borrower and Lenders may mutually agree in writing.

4.      Prepayment.  Borrower may prepay the Principal Sum in whole or in part at any time without premium or penalty.

5.      Loan Agreement and Other Loan Documents.  This Note is the "Promissory Note" described in the Debtor-In-Possession Loan Agreement by and between Borrower and Lenders (as amended, modified, restated, substituted, extended, and renewed at any time and from time to time, the "**Loan Agreement**").  The indebtedness evidenced by this Note is included within the meaning of the term "**Obligations**" as defined in the Loan Agreement.  This Note is one of the "**Loan Documents**" (as that term is defined in the Loan Agreement).

6.      Security.  This Note is secured as provided in the Loan Agreement.

7.      Events of Default.  The occurrence and continuance of any one or more of the following events beyond any applicable notice and cure period set forth in the Loan Documents shall constitute an event of default (individually, an "**Event of Default**" and collectively, the "**Events of Default**") under the terms of this Note:

(a)      The failure of Borrower to pay to Lenders when due any principal or interest payable by Borrower to Lenders under the terms of this Note; or

(b)      The occurrence of an event of default (as defined therein) under the Loan Agreement.

8.    Remedies.  At any time during the continuance of an Event of Default, Lenders may take one or more of the following actions, at the same or different times: (i) after obtaining relief from the automatic stay, which relief may be sought and obtained on shortened notice, declare this Note to be forthwith due and payable, whereupon the principal of this Note together with accrued interest thereon, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; (ii) after obtaining relief from the automatic stay, set off amounts in any accounts of Borrower and apply such amounts to the Obligations; and (iii) after obtaining relief from the automatic stay, exercise any and all remedies under this Agreement, the other Loan Documents, the Approval Order (as defined in the Loan Agreement), and applicable law available to Lenders.

9.    Expenses.  Borrower promises to pay to Lenders on demand by Lenders all reasonable costs and expenses incurred by Lenders following an Event of Default in connection with the collection and enforcement of this Note, including, without limitation, reasonable attorneys' fees and expenses and all court costs.

10.    Notices.  Any notice, request, or demand to or upon Borrower or Lenders shall be deemed to have been properly given or made when delivered in accordance with the Loan Agreement.

11.    Miscellaneous.  Each right, power, and remedy of Lenders as provided for in this Note or any of the other Loan Documents, or now or hereafter existing under any applicable law or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Note or any of the other Loan Documents or now or hereafter existing under any applicable law, and the exercise or beginning of the exercise by Lenders of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by Lenders of any or all such other rights, powers, or remedies.  No failure or delay by Lenders to insist upon the strict performance of any term, condition, covenant, or agreement of this Note or any of the other Loan Documents, or to exercise any right, power, or remedy consequent upon a breach thereof, shall constitute a waiver of any such term, condition, covenant, or agreement or of any such breach, or preclude Lenders from exercising any such right, power, or remedy at a later time or times.  By accepting payment after the due date of any amount payable under the terms of this Note, Lenders shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount.  No course of dealing or conduct shall be effective to amend, modify, waive, release, or change any provisions of this Note.

12.    Partial Invalidity.  In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal, or unenforceable.

13.    Captions.  The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope or intent of this Note.

14.    Applicable Law.  Borrower acknowledges and agrees that this Note shall be governed by the laws of the State of California and, to the extent applicable, the Bankruptcy Code.

15.    Consent to Jurisdiction.  Each of the parties to this Note hereby irrevocably and unconditional submits itself and its property in any legal action or proceeding relating to this Note or any of the other Loan Documents, or for recognition and enforcement of any judgment in respect thereof, the non-exclusive general jurisdiction of the Bankruptcy Court.

16.    Service of Process.  Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon Borrower's Chief Restructuring Officer in California.  Borrower irrevocably agrees that such service shall be deemed in every respect effective service of process upon Borrower in any such suit, action or proceeding, and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Borrower.  Nothing in this Section shall affect the right of Lenders to serve process in any manner otherwise permitted by law or limit the right of Lenders otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions.

17.    WAIVER OF TRIAL BY JURY.

BORROWER AND LENDERS (BY THEIR ACCEPTANCE HEREOF) HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDERS MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO (A) THIS NOTE OR (B) THE LOAN DOCUMENTS.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.

THIS WAIVER IS KNOWINGLY, WILLINGLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  BORROWER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered by its duly authorized officers, as of the day and year and the place first above written.

**MEDCISION, LLC**


By:_____
Name:

Title:

**EXHIBIT 3**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
J. BARRETT MARUM, Cal. Bar No. 228628
bmarum@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California 94301-1479
Telephone:   650.815.2600
Facsimile:   650.815.2601

Proposed Counsel for Debtor,
MedCision, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>MedCision, LLC,<br><br>               Debtor. | Chapter 11<br>Case No. 17-31272<br><br>Hon. Hannah L. Blumenstiel<br><br>**[PROPOSED] ORDER (I) APPROVING SECTION 364 BORROWING, (II) GRANTING LIENS, ADEQUATE PROTECTION AND USE OF CASH COLLATERAL, AND (III) GRANTING RELATED RELIEF** |

SMRH:485470054.3

This matter came to be heard on the *Motion For Order (1) Authorizing Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3), And 364(D)(1); (2) Authorizing The Use Of Cash Collateral; (3) Granting Security Interests And Superpriority Claims; (4) Providing Adequate Protection; (5) Modifying The Automatic Stay; And (6) Granting Related Relief; Memorandum Of Points And Authorities In Support Thereof* [Docket No. ____] (the "Motion") of MedCision, LLC, as debtor and debtor-in-possession (the "Debtor"), for the entry of an order authorizing the Debtor to, among other things:

       (i)    borrow money and seek other financial accommodations from BroadOak (as defined below) ("BroadOak," or the "Lender") pursuant to the terms of the Prepetition Notes and Prepetition Agreements as modified by the Motion and this Order pending a final hearing on the Motion;

       (ii)    grant liens and security interests in certain property of its bankruptcy estate (the "Estate") to secure payment of the foregoing borrowings by, and financial accommodations made to, the Debtor; and

       (iii)    grant adequate protection to the Debtor's prepetition secured lender, as described herein, and grant related relief.

       (iv)    grant, release, or waive claims and causes of action, if any, of the Debtor and the Estate.

The Court held an hearing with respect to the Motion on _____, 2018 (the "Hearing"), and the Court has considered the Motion, reviewed the exhibits attached to the Motion, and has completed the Hearing; and all objections, if any, to the relief requested in the Motion on an interim basis have been withdrawn, resolved or overruled by the Court as reflected on the record established by the Debtor at the Interim Hearing.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTOR AND LENDER TO THE ENTRY OF THIS ORDER, IT APPEARS TO THE COURT AS FOLLOWS:

    i)    Entry of this Order is necessary to prevent the immediate and irreparable harm to the Estate and the Debtor that would otherwise result if the Debtor is prevented from obtaining financing for the payment of operating expenses and supplies, and to meet other expenses necessary to preserve its assets and continue its operations.

ii)     The Debtor has made reasonable efforts, under the circumstances, to locate financing of the type contemplated by this Order; the Debtor is unable to obtain, in the ordinary course of business or otherwise, financing of the type contemplated herein, either in the form of unsecured credit allowable under section 503(b)(1) of the Code as an administrative expense pursuant to sections 364(a) or (b) of the Code, or unsecured credit allowable under sections 364(a) and 364(b) of the Code; and the Debtor is unable to obtain financing of the type contemplated herein in the form of secured credit pursuant to section 364(c) or 364(d) of the Code on terms more favorable than those offered by BroadOak pursuant to this Order.

iii)     BroadOak is willing to lend money and provide other financial accommodations to the Debtor up to a maximum principal amount of $80,000, and on the terms and conditions and with the protections provided herein and is relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtor hereunder.

iv)     The terms and conditions of the DIP Loan have been negotiated in good faith and at arm's length and the Debtor have offered sufficient proof thereof.  Accordingly, it appears to the Court that the terms of the loan sought to be approved in the Motion (the "DIP Loan") have been extended in good faith and that any credit extended, loans to be made, or other financial accommodations granted to the Debtor pursuant to this Order shall be deemed to be extended in good faith as that term is used in section 364(e) of the Code.

v)     Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtor and permit the Debtor to meet its operating expenses and is in the best interests of the Debtor, its creditors, and the Estate. The terms of the borrowings and other financial accommodations authorized hereby reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.     <u>Authorization for DIP Financing</u>.  The Motion is APPROVED.  The Debtor shall be and hereby is authorized to borrow money and seek other financial

accommodations from BroadOak on the terms and conditions set forth in the Debtor-in-Possession Loan Agreement attached to the Motion, all of which terms and conditions are hereby approved in their entirety. All loans, extensions of credit, and any other indebtedness (including interest and fees accruing in connection therewith) incurred pursuant to the DIP Loan shall hereinafter be referred to as the "Postpetition Indebtedness." The outstanding principal balance under the DIP Loan shall not exceed at $80,000 at any time.

2. Authorization to Execute and Deliver Necessary Documents. To effectuate and evidence the terms and conditions of the borrowings and extensions of credit and other financial accommodations to be made to the Debtor by BroadOak pursuant to the terms of this Order, the Debtor is hereby authorized to enter into such other documents as may be necessary to effectuate the terms of this Order. In addition, the Debtor is authorized to enter into nonmaterial modifications and amendments to the DIP Loan as may be agreed upon in writing by the Debtor and BroadOak. Upon execution and delivery of any such documents, such agreements and documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor and the Estate in accordance with their terms.

3. No Required Security Agreements/Filings. BroadOak shall not be required to file financing statements, mortgages, notices of liens, or other documents in any jurisdiction or take any other action in order to validate or perfect the security interests and liens granted to it by this Order. All security interests and liens granted herein to secure repayment of any of the Postpetition Indebtedness are and they hereby are deemed perfected, and no further notice, filing, or other act shall be required to effect such perfection. If BroadOak shall, in its sole discretion, choose to file financing statements, mortgages, or other documents or otherwise confirm perfection of such security interests and liens, BroadOak is authorized to effect such filings and recordations, and all such financing statements, mortgages, or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. A photocopy of this Order may, in the discretion of the BroadOak, be filed with or recorded in filing or recording

offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Order for filing and recording.

**Liens and Priority Claims**

4.      <u>Postpetition Liens</u>.  To secure payment of (i) the Postpetition Indebtedness and (ii) the "Adequate Protection Obligation" (as defined herein), BroadOak is hereby granted, pursuant to section 364(c) and, as to BroadOak's Prepetition Collateral, section 364(d)(1) of the Code, a valid, perfected, enforceable, and nonavoidable first priority security interest in and lien and on all of the Debtor's now existing or hereafter acquired or arising assets and property, and all now existing or hereafter acquired or arising proceeds, rents, products, and profits of each of the foregoing; *provided*, *however*, that, notwithstanding anything to the contrary above, the security interests and liens granted to BroadOak pursuant to this Order shall not extend to any cause of action of the Estate arising under sections 544, 545, 547, 548, 549, 550, 723(a), or 724(a) of the Code ("<u>Avoidance Actions</u>") or the proceeds thereof.  The security interests and liens granted to BroadOak under this Order shall, subject to the provisions of the Carve-Out (as defined herein), be at all times senior to the rights of the Debtor, the Estate, and all of their creditors, and shall at all times be senior to the rights of any successor trustee, examiner, or responsible person in these or any subsequent proceedings under the Code.  The property of the Debtor and the Estate in which BroadOak is being granted a security interest or lien pursuant to this Order shall hereinafter be referred to collectively as the "<u>Postpetition Collateral</u>," and the Postpetition Collateral together with the Prepetition Collateral shall hereinafter be referred to collectively as the "<u>Collateral</u>."  The term "<u>Adequate Protection Obligation</u>" shall mean Prepetition Indebtedness in an amount equal to any diminution in value of BroadOak's interest in the Prepetition Collateral that occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of (i) the Debtor's use of Collateral (including the Debtor's consumption of cash collateral), (ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of Prepetition

Collateral into Postpetition Collateral; or (iv) any other action, event, or circumstance, including, without limitation, the priming of the Prepetition Collateral pursuant to section 364(d)(1) of the Code under this Order.

5.     Priority of Postpetition Liens.  The Postpetition Indebtedness shall be deemed to have a security interest and lien upon the Postpetition Collateral senior to the security interest and lien securing the Adequate Protection Obligation.  In addition, the Postpetition Collateral shall secure all unpaid fees and expenses of BroadOak pursuant to the pre-petition Credit Agreements for the Pre-Petition Loans (as such terms are defined in the Debtor-in-Possession Loan Agreement), whether incurred prior to or after the Petition Date.

6.     Superpriority Administrative Claims.  The Postpetition Indebtedness, the Adequate Protection Obligation, and the Debtor's use (if any) of cash collateral pursuant to the Carve-Out or otherwise pursuant to this Order shall constitute an administrative expense under section 364(c)(1) of the Code, with priority, subject to the provisions of the Carve-Out, over all other claims or costs or expenses of administration of the kinds specified in, or ordered pursuant to, any provision of the Code (the "Superpriority Claim"), and shall at all times be senior to the rights of the Debtor or any successor trustee, examiner, or responsible person in these or any subsequent proceedings under the Code; provided, however, that the Superpriority Claim shall not be paid from the proceeds of Avoidance Actions.  The Postpetition Indebtedness shall be afforded a superpriority claim senior to that afforded the Adequate Protection Obligation.  With the exception of the fees permitted by the Carve-Out, no costs or expenses of administration that have been or may be incurred in these cases, any conversion of any of these cases pursuant to sections 105 or 1112 of the Code or otherwise, or in any other future proceedings related hereto, and no priority claims, are or will be prior to or on a parity with any claim of BroadOak against the Debtor arising out of the pre-petition Credit Agreements or Debtor-in-Possession Loan Documents.  In addition, no costs or expenses of administration incurred while the Debtor is authorized to borrow funds or use cash collateral shall be imposed against BroadOak,

the Postpetition Indebtedness, the Prepetition Indebtedness, or the Collateral under section 506(c) or 552(b) of the Code or otherwise, and no action or inaction on the part of BroadOak shall be deemed to constitute a consent to such surcharge. BroadOak shall be entitled to all of the rights and benefits of section 552(b) of the Code with respect to the Prepetition Indebtedness and the Collateral without any limitation pursuant to such section. BroadOak shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, either as to the Prepetition Indebtedness or the Postpetition Indebtedness.

7. <u>Carve-Out</u>. Should BroadOak's obligations to make loans or other financial accommodations pursuant to the Debtor-in-Possession Loan Agreement terminate as a result of an "Event of Default" or the occurrence of the "Maturity Date" (each as defined in the Debtor-in-Possession Loan Agreement) thereunder, subject to the terms of this paragraph, the BroadOak agrees that, notwithstanding the termination of such obligations, the Debtor may use BroadOak's cash collateral and to the extent there is not sufficient cash collateral, the Lender shall advance funds under the Debtor-in-Possession Loan Agreement, solely to the extent that the Debtor has no other source of payment, to pay, the "Carve-Out Expenses," as that term is defined in the Debtor-in-Possession Loan Agreement.

8. <u>Use of Proceeds; Collateral and Budget</u>. To the extent that the BroadOak makes advances or extends credit under this Order, the Debtor shall use such loans, and shall otherwise use their cash and other assets, solely in accordance with the terms of this Order and the Budget. The DIP Loan will be used to pay the expenses set forth in the Budget and to pay the Carve-Out. So long as (i) there has not been an "Event of Default" under and as defined in the pre-petition Credit Agreements, or (ii) the "Maturity Date" as defined in the pre-petition Credit Agreements shall not have occurred, the Debtor is hereby authorized to use any cash proceeds of the Collateral in accordance, and solely in accordance, with this Order and the Budget. Nothing in this Order shall be construed to require the BroadOak to make advances or extensions of credit or other financial

accommodations (including consent to use cash collateral) to permit the Debtor to pay any expenses, except to the extent expressly provided for in this Order and the Budget.

9. <u>Limitations on Use of Cash Collateral</u>. No proceeds of loans or other financial accommodations made by the BroadOak hereunder, and no cash collateral (including the Carve-Out Expenses), may be used to compensate services rendered or expenses incurred in connection with, directly or indirectly, (A) the modification, stay, or amendment of this Order without the consent of BroadOak, or (B) a violation, breach or default of this Order or any of the Postpetition Loan Documents, including, without limitation, any claim or action the purpose of which is to seek or the result of which would be to obtain any relief (i) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Indebtedness, the Postpetition Indebtedness, or BroadOak's liens or security interests in the Collateral; or (ii) preventing, hindering, or otherwise delaying, whether directly or indirectly, BroadOak's assertion, enforcement, or realization upon any Collateral as permitted by this Order or such documents; *provided*, *however*, that nothing contained herein shall prohibit the use of the loan proceeds or cash collateral, in the aggregate amount of no more than $50,000, for payment of professional fees reasonably incurred by the Debtor or an official committee of unsecured creditors of the Debtor if one is appointed (the "<u>Committee</u>") for purposes of determining whether to bring an Avoidance Action prior to the deadline for filing Challenge Provisions.

10. <u>Reliance by Lender</u>. The Debtor shall not seek to modify, vacate, or amend this Order without the written consent of BroadOak. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity of any debt to BroadOak (including the Adequate Protection Obligation) incurred pursuant to this Order prior to the later of (1) the effective date of such stay, modification, or vacation, and (2) receipt of written notice thereof by counsel to BroadOak at the address set forth in <u>Exhibit A</u> to this Order (the "<u>Effective Time</u>"), or otherwise affect the validity and enforceability of any lien, security interest, or priority authorized hereby. Notwithstanding any such stay,

modification, or vacation, any advances of funds made pursuant to this Order by BroadOak to or for the benefit of the Debtor prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

11.  Good Faith.  The Court has considered and determined the matters addressed set forth in this Order pursuant to its power under sections 364(c) and 364(d) of the Code to authorize the Debtor to obtain credit and other financial accommodations on the terms agreed to by and between the Debtor and BroadOak and as set forth in this Order and, thus, each of such terms and conditions with respect to the Postpetition Indebtedness, as part of an authorization under such section, is subject to the protections contained in section 364(e) of the Code.

**Miscellaneous**

12.  No Further Liens.  In consideration of the financing and other accommodations made available pursuant hereto, the Debtor irrevocably waives any right to grant or impose, or request that the Court grant or impose, under section 364 of the Code or otherwise, liens, security interests or mortgages on any property, whether equal, superior, or subordinate, to BroadOak's liens or security interests on that property. Such waiver shall be binding upon any successor trustee, examiner, or responsible person in these or any subsequent proceedings under the Code.

13.  Modification of Automatic Stay.  The automatic stay provisions of section 362 of the Code are hereby modified as to BroadOak to the extent necessary to permit BroadOak to implement the provisions of this Order, thereby permitting BroadOak, *inter alia*, (i) to receive and apply collections, payments, or proceeds of Collateral, (ii) to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens on the Collateral, and (iii) to charge any fees and interest accruing under the pre-petition Credit Agreements.

14.  No Modification of Rights.  The liens, security interests, rights, and remedies granted to BroadOak pursuant to this Order shall not be modified, altered, or impaired in any manner by any plan of reorganization or order of confirmation for the Debtor, or by

any other financings of, extensions of credit to, or incurring of debt by the Debtor, whether pursuant to sections 363 or 364 of the Code, or otherwise. In connection therewith, no order confirming any plan of the Debtor shall be entered unless such order provides for the payment in full in cash of all Postpetition Indebtedness on or before the effective date of such plan.

15. <u>Dismissal</u>. Unless otherwise agreed by BroadOak, the Debtor shall not seek dismissal of this case unless and until the Postpetition Indebtedness shall have been paid in full in cash. If an order dismissing the Debtor's case under section 1112 of the Code or otherwise is at any time entered, (1) the priority claims, liens, and security interests granted to BroadOak pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until the Postpetition Indebtedness shall have been paid in full in cash; (2) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of interpreting this Order; and (3) such order shall not modify the rights granted to BroadOak pursuant to this <u>Paragraph 15</u>.

16. <u>No Third-Party Beneficiaries</u>. No third party is intended to be or shall be deemed to be a third-party beneficiary of the provisions of this Order.

17. <u>Immediate Binding Effect</u>. The subject of this Order is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(D). This Order shall be valid and fully effective immediately upon its entry and, upon such entry, shall be binding upon and inure to the benefit of the Lender, the Debtor, its Estate, and their respective successors and assigns (including, without limitation, any trustee, examiner, or responsible person hereinafter appointed as a representative of the Estate in these or any subsequent proceedings under the Code), and the terms and provisions of this Order as well as the liens and security interests granted hereunder shall continue in these proceedings and any superseding proceedings under the Code, and such liens and security interests shall maintain their priority as provided by this Order, until satisfied and discharged. In the event of any inconsistency between this Order and the Prepetition Notes and Prepetition Agreements, the terms of this Order control.

1       18.    <u>No Adequate Protection Finding</u>.  Nothing contained in this Order shall be deemed a finding with respect to adequate protection (as that term is described in section 361 of the Code) of the interest of BroadOak in the Prepetition Collateral.  In addition, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any of the rights, claims or privileges of BroadOak in the Debtor's bankruptcy proceedings, any subsequent proceedings under the Code, or otherwise, including, without limitation, the right of BroadOak to request additional adequate protection of its interests in the Collateral or relief from or modification of the automatic stay under section 362 of the Code.

19.    <u>Proofs of Claim</u>.  BroadOak shall not be required to file a proof of claim in this or any successor case with respect to the Prepetition Indebtedness or the DIP Loan, notwithstanding the establishment of any bar date with respect to claims against the Debtor.

**\*\*END OF ORDER\*\***

# EXHIBIT A

**Counsel for the Debtor**

Sheppard Mullin Richter & Hampton
Ori Katz, Esq.
Barrett Marum, Esq.
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
Email: okatz@sheppardmullin.com; bmarum@sheppardmullin.com

**Counsel for BroadOak**

Brent C. Strickland
Whiteford, Taylor & Preston
7501 Wisconsin Avenue
Suite 700W
Bethesda, Maryland 20814-6521
Email: bstrickland@wtplaw.com

SMRH:485570054.3

**EXHIBIT 4**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
J. BARRETT MARUM, Cal. Bar No. 228628
bmarum@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California 94301-1479
Telephone:    650.815.2600
Facsimile:    650.815.2601

Proposed Counsel for Debtor,
MedCision, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re: | Chapter 11<br>Case No. 17-31272 |
|---|---|
| MedCision, LLC, | |
| Debtor. | Hon. Hannah L. Blumenstiel |
| | **[PROPOSED] ORDER (I) APPROVING SECTION 364 BORROWING, (II) GRANTING LIENS, ADEQUATE PROTECTION AND USE OF CASH COLLATERAL, AND (III) GRANTING RELATED RELIEF** |

This matter came to be heard on the *Motion For Order (1) Authorizing Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3), And 364(D)(1); (2) Authorizing The Use Of Cash Collateral; (3) Granting Security Interests And Superpriority Claims; (4) Providing Adequate Protection; (5) Modifying The Automatic Stay; And (6) Granting Related Relief; Memorandum Of Points And Authorities In Support Thereof* [Docket No. ___] (the "<u>Motion</u>") of MedCision, LLC, as debtor and debtor-in-possession (the "<u>Debtor</u>"), for the entry of an order authorizing the Debtor to, among other things:

(i)      borrow money and seek other financial accommodations from BroadOak (as defined below) ("<u>BroadOak</u>," or the "<u>Lender</u>") pursuant to the terms of the Prepetition Notes and Prepetition Agreements as modified by the Motion and this Order pending a final hearing on the Motion;

(ii)     grant liens and security interests in certain property of its bankruptcy estate (the "<u>Estate</u>") to secure payment of the foregoing borrowings by, and financial accommodations made to, the Debtor; and

(iii)    grant adequate protection to the Debtor's prepetition secured lender, as described herein, and grant related relief.

(iv)    grant, release, or waive claims and causes of action, if any, of the Debtor and the Estate.

The Court held an hearing with respect to the Motion on _____, 2018 (the "<u>Hearing</u>"), and the Court has considered the Motion, reviewed the exhibits attached to the Motion, and has completed the Hearing; and all objections, if any, to the relief requested in the Motion on an interim basis have been withdrawn, resolved or overruled by the Court as reflected on the record established by the Debtor at the Interim Hearing.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTOR AND LENDER TO THE ENTRY OF THIS ORDER, IT APPEARS TO THE COURT AS FOLLOWS:

i)      Entry of this Order is necessary to prevent the immediate and irreparable harm to the Estate and the Debtor that would otherwise result if the Debtor is prevented, pending a final hearing on the Motion, from obtaining immediate financing for the payment of, *inter alia*, wages, salaries, operating expenses, the purchase of inventory and

supplies, and to meet other expenses necessary to preserve its assets and continue its operations.

ii)     The Debtor has made reasonable efforts, under the circumstances, to locate financing of the type contemplated by this Order; the Debtor is unable to obtain, in the ordinary course of business or otherwise, financing of the type contemplated herein, either in the form of unsecured credit allowable under section 503(b)(1) of the Code as an administrative expense pursuant to sections 364(a) or (b) of the Code, or unsecured credit allowable under sections 364(a) and 364(b) of the Code; and the Debtor is unable to obtain financing of the type contemplated herein in the form of secured credit pursuant to section 364(c) or 364(d) of the Code on terms more favorable than those offered by BroadOak pursuant to this Order.

iii)     BroadOak is willing to lend money and provide other financial accommodations to the Debtor up to a maximum principal amount of $80,000 through such date, and on the terms and conditions and with the protections provided herein and is relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtor hereunder.

iv)     The terms and conditions of the DIP Loan have been negotiated in good faith and at arm's length by all parties involved, and BroadOak and the Debtor have offered sufficient proof thereof.  Accordingly, it appears to the Court that the terms of the loan sought to be approved in the Motion (the "DIP Loan") have been extended in good faith and that any credit extended, loans to be made, or other financial accommodations granted to the Debtor pursuant to this Order shall be deemed to be extended in good faith as that term is used in section 364(e) of the Code.

v)     Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtor and permit the Debtor to meet its operating expenses and is in the best interests of the Debtor, its creditors, and the Estate.  The terms of the borrowings and other financial accommodations authorized

1  hereby reflect the Debtor's exercise of prudent business judgment consistent with its

2  fiduciary duties.

3      ACCORDINGLY, IT IS HEREBY ORDERED THAT:

4      1.    <u>Authorization for DIP Financing</u>.  The Motion is APPROVED.  The Debtor

5  shall be and hereby is authorized to borrow money and seek other financial

6  accommodations from BroadOak on the terms and conditions set forth in the Debtor-in-

7  Possession Loan Agreement attached to the Motion, all of which terms and conditions are

8  hereby approved. <u>in their entirety</u>.  All loans, extensions of credit, and any other

9  indebtedness (including interest and fees accruing in connection therewith) incurred

10  pursuant to the DIP Loan shall hereinafter be referred to as the "<u>Postpetition</u>

11  <u>Indebtedness</u>."  The outstanding principal balance under the DIP Loan shall not exceed at

12  ~~any one time~~ $80,000 <u>at any time</u>.

13      2.    <u>Authorization to Execute and Deliver Necessary Documents</u>.  To effectuate

14  and evidence the terms and conditions of the borrowings and extensions of credit and other

15  financial accommodations to be made to the Debtor by BroadOak pursuant to the terms of

16  this Order, the Debtor is hereby authorized to enter into such other documents as may be

17  necessary to effectuate the terms of this Order.  In addition, the Debtor is authorized to

18  enter into nonmaterial modifications and amendments to the DIP Loan as may be agreed

19  upon in writing by the Debtor and BroadOak.  Upon execution and delivery of any such

20  documents, such agreements and documents shall constitute valid and binding obligations

21  of the Debtor, enforceable against the Debtor and the Estate in accordance with their terms.

22      3.    <u>No Required Security Agreements/Filings</u>.  BroadOak shall not be required

23  to file financing statements, mortgages, notices of liens, or other documents in any

24  jurisdiction or take any other action in order to validate or perfect the security interests and

25  liens granted to it by this Order.  All security interests and liens granted herein to secure

26  repayment of any of the Postpetition Indebtedness are and they hereby are deemed

27  perfected, and no further notice, filing, or other act shall be required to effect such

28

1  perfection.  If BroadOak shall, in its sole discretion, choose to file financing statements,

2  mortgages, or other documents or otherwise confirm perfection of such security interests

3  and liens, BroadOak is authorized to effect such filings and recordations, and all such

4  financing statements, mortgages, or similar documents shall be deemed to have been filed

5  or recorded at the time and on the date of entry of this Order.  A photocopy of this Order

6  may, in the discretion of the BroadOak, be filed with or recorded in filing or recording

7  offices in addition to or in lieu of such financing statements, notices of lien or similar

8  instruments, and all filing offices are hereby directed to accept such copy of this Order for

9  filing and recording.

10  **Liens and Priority Claims**

11         4.      Postpetition Liens.  To secure payment of (i) the Postpetition Indebtedness

12  and (ii) the "Adequate Protection Obligation" (as defined herein), BroadOak is hereby

13  granted, pursuant to section 364(c) and, as to BroadOak's Prepetition Collateral, section

14  364(d)(1) of the Code, a valid, perfected, enforceable, and nonavoidable first priority

15  security interest in and lien and on all of the Debtor's now existing or hereafter acquired or

16  arising assets and property, and all now existing or hereafter acquired or arising proceeds,

17  rents, products, and profits of each of the foregoing; *provided*, *however*, that,

18  notwithstanding anything to the contrary above, the security interests and liens granted to

19  BroadOak pursuant to this Order shall not extend to any cause of action of the Estate

20  arising under sections 544, 545, 547, 548, 549, 550, 723(a), or 724(a) of the Code

21  ("Avoidance Actions") or the proceeds thereof.  The security interests and liens granted to

22  BroadOak under this Order shall, subject to the provisions of the Carve-Out (as defined

23  herein), be at all times senior to the rights of the Debtor, the Estate, and all of their

24  creditors, and shall at all times be senior to the rights of any successor trustee, examiner, or

25  responsible person in these or any subsequent proceedings under the Code.  The property

26  of the Debtor and the Estate in which BroadOak is being granted a security interest or lien

27  pursuant to this Order shall hereinafter be referred to collectively as the "Postpetition

28

Collateral," and the Postpetition Collateral together with the Prepetition Collateral shall hereinafter be referred to collectively as the "Collateral." The term "Adequate Protection Obligation" shall mean Prepetition Indebtedness in an amount equal to any diminution in value of BroadOak's interest in the Prepetition Collateral that occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of (i) the Debtor's use of Collateral (including the Debtor's consumption of cash collateral), (ii) depreciation or price fluctuation in the Collateral, (iii) the conversion of Prepetition Collateral into Postpetition Collateral; or (iv) any other action, event, or circumstance, including, without limitation, the priming of the Prepetition Collateral pursuant to section 364(d)(1) of the Code under this Order.

5. **Priority of Postpetition Liens**. The Postpetition Indebtedness shall be deemed to have a security interest and lien upon the Postpetition Collateral senior to the security interest and lien securing the Adequate Protection Obligation. In addition, the Postpetition Collateral shall secure all unpaid fees and expenses of BroadOak pursuant to the pre-petition Credit Agreements for the Pre-Petition Loans (as such terms are defined in the Debtor-in-Possession Loan Agreement), whether incurred prior to or after the Petition Date.

6. **Superpriority Administrative Claims**. The Postpetition Indebtedness, the Adequate Protection Obligation, and the Debtor's use (if any) of cash collateral pursuant to the Carve-Out or otherwise pursuant to this Order shall constitute an administrative expense under section 364(c)(1) of the Code, with priority, subject to the provisions of the Carve-Out, over all other claims or costs or expenses of administration of the kinds specified in, or ordered pursuant to, any provision of the Code (the "Superpriority Claim"), and shall at all times be senior to the rights of the Debtor or any successor trustee, examiner, or responsible person in these or any subsequent proceedings under the Code; provided, however, that the Superpriority Claim shall not be paid from the proceeds of Avoidance Actions. The Postpetition Indebtedness shall be afforded a superpriority claim

senior to that afforded the Adequate Protection Obligation. With the exception of the fees permitted by the Carve-Out, no costs or expenses of administration that have been or may be incurred in these cases, any conversion of any of these cases pursuant to sections 105 or 1112 of the Code or otherwise, or in any other future proceedings related hereto, and no priority claims, are or will be prior to or on a parity with any claim of BroadOak against the Debtor arising out of the pre-petition Credit Agreements or Debtor-in-Possession Loan Documents. In addition, no costs or expenses of administration incurred while the Debtor is authorized to borrow funds or use cash collateral shall be imposed against BroadOak, the Postpetition Indebtedness, the Prepetition Indebtedness, or the Collateral under section 506(c) or 552(b) of the Code or otherwise, and no action or inaction on the part of BroadOak shall be deemed to constitute a consent to such surcharge. BroadOak shall be entitled to all of the rights and benefits of section 552(b) of the Code with respect to the Prepetition Indebtedness and the Collateral without any limitation pursuant to such section. BroadOak shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, either as to the Prepetition Indebtedness or the Postpetition Indebtedness.

7. _Carve-Out_. Should BroadOak's obligations to make loans or other financial accommodations pursuant to the Debtor-in-Possession Loan Agreement terminate as a result of an "Event of Default" or the occurrence of the "Maturity Date" (each as defined in the Debtor-in-Possession Loan Agreement) thereunder, subject to the terms of this paragraph, the BroadOak agrees that, notwithstanding the termination of such obligations, the Debtor may use BroadOak's cash collateral and to the extent there is not sufficient cash collateral, the Lender shall advance funds under the Debtor-in-Possession Loan Agreement, solely to the extent that the Debtor has no other source of payment, to pay, the "Carve-Out Expenses," as that term is defined in the Debtor-in-Possession Loan Agreement.

8.     Use of Proceeds; Collateral and Budget.  To the extent that the BroadOak makes advances or extends credit under this Order, the Debtor shall use such loans, and shall otherwise use their cash and other assets, solely in accordance with the terms of this Order and the Budget.  The DIP Loan will be used to pay the expenses set forth in the Budget and to pay the Carve-Out.  So long as (i) there has not been an "Event of Default" under and as defined in the pre-petition Credit Agreements, or (ii) the "Maturity Date" as defined in the pre-petition Credit Agreements shall not have occurred, the Debtor is hereby authorized to use any cash proceeds of the Collateral in accordance, and solely in accordance, with this Order and the Budget.  Nothing in this Order shall be construed to require the BroadOak to make advances or extensions of credit or other financial accommodations (including consent to use cash collateral) to permit the Debtor to pay any expenses, except to the extent expressly provided for in this Order and the Budget.

9.     Limitations on Use of Cash Collateral.  No proceeds of loans or other financial accommodations made by the BroadOak hereunder, and no cash collateral (including the Carve-Out Expenses), may be used to compensate services rendered or expenses incurred in connection with, directly or indirectly, (A) the modification, stay, or amendment of this Order without the consent of BroadOak, or (B) a violation, breach or default of this Order or any of the Postpetition Loan Documents, including, without limitation, any claim or action the purpose of which is to seek or the result of which would be to obtain any relief (i) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Indebtedness, the Postpetition Indebtedness, or BroadOak's liens or security interests in the Collateral; or (ii) preventing, hindering, or otherwise delaying, whether directly or indirectly, BroadOak's assertion, enforcement, or realization upon any Collateral as permitted by this Order or such documents; *provided*, *however*, that nothing contained herein shall prohibit the use of the loan proceeds or cash collateral, in the aggregate amount of no more than $50,000, for payment of professional fees reasonably incurred by the Debtor or an official committee of unsecured creditors of the Debtor if one

is appointed (the "Committee") for purposes of determining whether to bring an Avoidance Action prior to the deadline for filing Challenge Provisions.

10.     Reliance by Lender.  The Debtor shall not seek to modify, vacate, or amend this Order without the written consent of BroadOak.  If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity of any debt to BroadOak (including the Adequate Protection Obligation) incurred pursuant to this Order prior to the later of (1) the effective date of such stay, modification, or vacation, and (2) receipt of written notice thereof by counsel to BroadOak at the address set forth in Exhibit A to this Order (the "Effective Time"), or otherwise affect the validity and enforceability of any lien, security interest, or priority authorized hereby.  Notwithstanding any such stay, modification, or vacation, any advances of funds made pursuant to this Order by BroadOak to or for the benefit of the Debtor prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

11.     Good Faith.  The Court has considered and determined the matters addressed set forth in this Order pursuant to its power under sections 364(c) and 364(d) of the Code to authorize the Debtor to obtain credit and other financial accommodations on the terms agreed to by and between the Debtor and BroadOak and as set forth in this Order and, thus, each of such terms and conditions with respect to the Postpetition Indebtedness, as part of an authorization under such section, is subject to the protections contained in section 364(e) of the Code.

**Miscellaneous**

12.     No Further Liens.  In consideration of the financing and other accommodations made available pursuant hereto, the Debtor irrevocably waives any right to grant or impose, or request that the Court grant or impose, under section 364 of the Code or otherwise, liens, security interests or mortgages on any property, whether equal, superior, or subordinate, to BroadOak's liens or security interests on that property. Such

waiver shall be binding upon any successor trustee, examiner, or responsible person in these or any subsequent proceedings under the Code.

13. <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Code are hereby modified as to BroadOak to the extent necessary to permit BroadOak to implement the provisions of this Order, thereby permitting BroadOak, *inter alia*, (i) to receive and apply collections, payments, or proceeds of Collateral, (ii) to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens on the Collateral, and (iii) to charge any fees and interest accruing under the pre-petition Credit Agreements.

14. <u>No Modification of Rights</u>. The liens, security interests, rights, and remedies granted to BroadOak pursuant to this Order shall not be modified, altered, or impaired in any manner by any plan of reorganization or order of confirmation for the Debtor, or by any other financings of, extensions of credit to, or incurring of debt by the Debtor, whether pursuant to sections 363 or 364 of the Code, or otherwise. In connection therewith, no order confirming any plan of the Debtor shall be entered unless such order provides for the payment in full in cash of all Postpetition Indebtedness on or before the effective date of such plan.

15. <u>Dismissal</u>. Unless otherwise agreed by BroadOak, the Debtor shall not seek dismissal of this case unless and until the Postpetition Indebtedness shall have been paid in full in cash. If an order dismissing the Debtor's case under section 1112 of the Code or otherwise is at any time entered, (1) the priority claims, liens, and security interests granted to BroadOak pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until the Postpetition Indebtedness shall have been paid in full in cash; (2) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of interpreting this Order; and (3) such order shall not modify the rights granted to BroadOak pursuant to this <u>Paragraph 15</u>.

16. <u>No Third-Party Beneficiaries</u>. No third party is intended to be or shall be deemed to be a third-party beneficiary of the provisions of this Order.

17. <u>Immediate Binding Effect</u>. The subject of this Order is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(D). This Order shall be valid and fully effective immediately upon its entry and, upon such entry, shall be binding upon and inure to the benefit of the Lender, the Debtor, its Estate, and their respective successors and assigns (including, without limitation, any trustee, examiner, or responsible person hereinafter appointed as a representative of the Estate in these or any subsequent proceedings under the Code), and the terms and provisions of this Order as well as the liens and security interests granted hereunder shall continue in these proceedings and any superseding proceedings under the Code, and such liens and security interests shall maintain their priority as provided by this Order, until satisfied and discharged. In the event of any inconsistency between this Order and the Prepetition Notes and Prepetition Agreements, the terms of this Order control.

18. <u>No Adequate Protection Finding</u>. Nothing contained in this Order shall be deemed a finding with respect to adequate protection (as that term is described in section 361 of the Code) of the interest of BroadOak in the Prepetition Collateral. In addition, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any of the rights, claims or privileges of BroadOak in the Debtor's bankruptcy proceedings, any subsequent proceedings under the Code, or otherwise, including, without limitation, the right of BroadOak to request additional adequate protection of its interests in the Collateral or relief from or modification of the automatic stay under section 362 of the Code.

19. <u>Proofs of Claim</u>. BroadOak shall not be required to file a proof of claim in this or any successor case with respect to the Prepetition Indebtedness or the DIP Loan, notwithstanding the establishment of any bar date with respect to claims against the Debtor.

1

2                              **END OF ORDER**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | **<u>EXHIBIT A</u>** |
| 2 | **<u>Counsel for the Debtor</u>** |
| 3 | Sheppard Mullin Richter & Hampton |
| | Ori Katz, Esq. |
| 4 | Barrett Marum, Esq. |
| | 4 Embarcadero Center, 17th Floor |
| 5 | San Francisco, CA 94111 |
| | Email: okatz@sheppardmullin.com; bmarum@sheppardmullin.com |
| 6 | |
| 7 | **<u>Counsel for BroadOak</u>** |
| 8 | Brent C. Strickland |
| | Whiteford, Taylor & Preston |
| 9 | 7501 Wisconsin Avenue |
| | Suite 700W |
| 10 | Bethesda, Maryland 20814-6521 |
| | Email: bstrickland@wtplaw.com |