SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
J. BARRETT MARUM, Cal. Bar No. 228628
bmarum@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
MATT KLINGER, Cal. Bar No. 307362
mklinger@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947

Counsel for the Debtor,
MedCision, LLC

UNITED STATES DISTRICT BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 17-31272 |
| MedCision, LLC<br>    *f/k/a BioCision, LLC*, | Chapter 11 |
| Debtor. | **MOTION TO APPROVE (I) BID PROCEDURES, (II) FORM OF ASSET PURCHASE AGREEMENT, AND (III) RELATED RELIEF, IN CONNECTION WITH SALE OF DEBTOR'S ASSETS** |
| | Hearing Requested on Shortened Time<br>Date:      April 12, 2018<br>Time:      10:00 a.m.<br>Judge:    Hon. Hannah L. Blumenstiel<br>Place:     450 Golden Gate Avenue<br>              16th Floor, Courtroom 19<br>              San Francisco, CA   94102 |

SMRH:485387125.5
Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:15:10    Page 1 of 27

# I.

## INTRODUCTION

MedCision, LLC, the debtor and debtor-in-possession in the above-captioned case ("MedCision" or the "Debtor") intends to seek Court approval of a sale (the "Sale") of the Debtor's assets (the "Assets") pursuant to an asset purchase agreement (the "APA") with BroadOak Fund, II LLC and BroadOak Fund, III, LLC (collectively, "BroadOak" or the "Purchaser"). The Debtor is filing a separate motion for the approval of the Sale (the "Sale Motion"). In connection with the Sale, the Debtor intends to hold an auction at the hearing on the Sale Motion in the event that any other person or entity submits a qualifying overbid for the Assets (the "Sale Hearing"). The Assets are comprised of the majority of Debtor's property, including all inventory, intellectual property, and rights to various agreements.

By way of this motion (the "Motion"), the Debtor (i) seeks to establish certain bid and sale procedures, (ii) requests this Court approve the form of the APA attached as Exhibit "A" this Motion, and (iii) requests this Court approve related relief. This Motion is made pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 2002 and 6004. The Debtor requests that the Court approve the bidding procedures enumerated below and the form of APA attached as Exhibit "A to this Motion in connection with the contemplated Sale and auction of the Assets.

The Motion is based on the arguments below, as well as the concurrently filed declaration of Kyle Everett (the "Everett Declaration"), the Chief Restructuring Officer of the Debtor, and all other pleadings, evidence or arguments submitted at or before final determination of this Motion.

# II.

## BACKGROUND

### A. The Debtor.

On December 20, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code. By Order dated February 16, 2018

Case: 17-31272   Doc# 142   Filed: 04/04/18   Entered: 04/04/18 17:16:07   Page 2 of 27
SMRH:485887125.5

(the "Conversion Date"), the Debtor's case was converted to chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee has been appointed by the Office of the United States Trustee.

A detailed discussion of the Debtor's background, capital structure, and the events leading to this bankruptcy filing is set forth in the declaration of Rolf Ehrhardt filed in support of the Debtor's Motion to Convert its Case to Chapter 11 [Docket No. 9-1]. The discussion contained therein is incorporated in this Application as though fully set forth herein.

On February 22, 2018, the Debtor filed its *Application for Entry of an Order Authorizing the Retention of Kyle Everett of Development Specialists, Inc., as its Chief Restructuring Officer* [Dkt. No. 91] (the "CRO Employment Application"). On March 22, 2018, this Court entered its order approving the CRO Employment Application [Dkt. No. 321] and Kyle Everett has been serving as the Debtor's Chief Restructuring Officer ("CRO") effective as of the Conversion Date.

On March 16, 2018, the Debtor filed its *Application for Entry of an Order Authorizing the Employment of Three Twenty-One Capital Partners as Investment Banker to the Debtor* [Dkt. No. 117] (the "Investment Banker Application"). By way of the Investment Banker Application, the Debtor seeks to employ Three Twenty-One Capital Partners as its investment banker (the "Proposed Investment Banker") in connection with the effort to sell the Assets.

**B. The APA**

The Debtor has conducted extensive negotiations with the Purchaser, in which the Purchaser has contemplated buying the majority of the Debtor's assets. The Debtor and the Purchaser have discussed multiple drafts of an asset purchase agreement in the form of the APA, and although they have yet to execute an APA, it is anticipated that an APA in substantially the form attached to this Motion as Exhibit "A" will ultimately form the basis for a transaction.

The transaction under the APA provides for the Sale of the Assets for $4,393,000 (the "Purchase Price"), consisting of a credit bid by the Purchaser of $4,313,000 and a cash payment in the amount of $80,000. Excluded from the Assets are certain assets described in the APA, which include certain causes of action, any rights to tax refunds, and accounts receivable.

Under the APA, in the event the Debtor does not sell the Assets to Purchaser but instead closes a transaction with a third party for sale price higher than the Purchase Price, the Debtor agreed to pay the reasonable and actual documented costs and expenses incurred by Purchaser (including reasonable, documented attorney's fees) in connection with the negotiation, preparation and performance of this Agreement and the transaction contemplated thereby (collectively, the "Expense Reimbursement"), in an amount not to exceed $25,000.00. The Expense Reimbursement, if applicable, is a reasonable concession the Debtor has made to the Purchaser for its costs and its agreement to serve as a stalking horse buyer.

### C. The Proposed Bid Procedures

The bid procedures that the Debtor proposes to implement are set forth in Exhibit "B attached to this Motion and incorporated herein by reference (the "Bid Procedures"). The Debtor has designed the Bid Procedures to facilitate a full and fair process designed to maximize the value of the Assets for the benefit of the Debtor's estate and so that the sale process will not be delayed by last minute offers. In summary, the Bid Procedures provide for the following:

1. The Bidding Procedures require potential bidders to execute a non-disclosure agreement ("NDA") so such parties can be provided access to due diligence materials. A form of an NDA has already been created and a number of potential bidders have signed the NDA and are already looking at this opportunity.

2. The Bid Procedures set 12:00 p.m. Pacific time on April 30, 2018 as the deadline to submit bids with respect to the Assets by potentially interested bidders.

3.     The Bid Procedures set the parameters of what qualifies as a "Qualified Bid" such as the bidding package should include the following:

a.     A bid for a purchase price for the Assets in an amount at least equal to $4,493,000 (the Purchase Price plus an initial overbid of $100,000).

b.     The identity of the party submitting the bid and details regarding any other parties participating in the bid.

c.     Written evidence that the Potential Bidder has the necessary authority to make the bid.

d.     Written evidence of a financing commitment or other evidence, satisfactory to the Debtor, of the financial ability to close under its asset purchase agreement without any financing or other contingency.

e.     A draft asset purchase agreement in a form substantially similar to the BroadOak APA, together with a redline version marked to show changes from the BroadOak APA.  Such bid must be irrevocable.

f.     A good faith Deposit in the amount of $25,000 to be deposited with the Debtor's counsel and which is refundable after closing with the successful bidder if the bidder is outbid at the sale.

g.     Acknowledgment satisfactory to the Debtor that the bidder is prepared to submit a declaration to support an evidentiary basis for a finding of good faith under § 363(m).

4.     The Bid Procedures provide that Qualified Bidders will be notified of their status as such by 12:00 p.m. Pacific time on May 1, 2018.

5.     The Bid Procedures provide that if one or more Qualified Bids are received, the Auction would be held on May 2 or May 3, 2018 where all Qualified Bidders would be offered the opportunity to increase their bids in increments of at least $75,000 in value. The Debtor will exercise its discretion in selecting the auction date based on the identity of the Qualified Bidders and will notify the Qualified Bidders of the date and time of the auction by 12:00 p.m. Pacific time on May 1, 2018.  The Bid Procedures further provide

that if the Debtor holds the Auction on May 2, the Debtor may allow Qualified Bidders to participate via videoconference.

6.     When the bidding at the Auction has ceased, the two bids that are deemed by the Debtor to be the highest and best bids will be announced at the close of the bidding, The highest bid is referred to in the Bid Procedures as the "Prevailing Bid" and the maker of such bid the "Prevailing Bidder." The next highest and best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder."

7.     At a Sale Hearing on May 3, 2018, the Debtor will seek Bankruptcy Court approval of the Prevailing Bid and of the Back-Up Bid. If the Auction is held on May 3, 2018, it will be held at the courthouse in conjunction with the Sale Hearing. The form of the Sale Order must be acceptable to the Debtor. In the event that a Prevailing Bidder cannot or refuses to consummate the sale because of the breach or failure on the part of the Prevailing Bidder, the Debtor will be permitted to close with the Back-Up Bidder on the Back-Up Bid without further order of the Court.

8.     The Debtor reserves the right to make reasonable revisions to the proposed Bidding Procedures as circumstances may warrant. The Debtor shall promptly notify parties in interest and prospective bidders of any such modifications.

## III.

## ARGUMENT

### A.     The Bid Procedures Are Adequate and Reasonable Under the Circumstances.

The proposed Bid Procedures serve the best interests of the bankruptcy estate. The Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Section 363 does not specify a standard for approving bid procedures, the Ninth Circuit Bankruptcy Appellate Panel has established a standard based on the Debtor's "sound business judgment." Under this standard, the "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification." *In re*

*Walter*, 83 B.R. 14, 16 (9th Cir. 1988); *see also In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *In re Psychometric Systems, Inc.*, 267 B.R. 670, 674 (Bankr. D. Colo. 2007) (collecting cases).

In determining whether the debtor-in-possession has complied with the sound business judgment rule, the Court must consider whether: (a) there has been "[a]ny improper or bad motive," (b) the "price is fair and the negotiations or bidding has occurred at arm's length" and (c) the sale followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest." *In re Castre*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004). When applying the rule, "the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (considering the rule in the context of the debtor's decision to reject a contract). In the context of this rule, courts often approve overbid procedures, *see, e.g., In re Crown Corp.*, 679 F.2d 774, 777 (9th Cir. 1982).

Of course, this Court enjoys broad powers to approve such measures. "The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986); *accord In re Geothermal Resources Int'l*, 93 F.3d 648, 651 (9th Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2nd Cir. 1983) (noting a bankruptcy judge's "broad administrative power" and "substantial freedom to tailor his orders" to a case at hand).

Here, the Bidding Procedures comport with the Debtor's sound business judgment. The Bidding Procedures are the result of extensive discussions between the Debtor's CRO, its Proposed Investment Banker, and its bankruptcy counsel. The Debtor believes that its ability to select the highest and best bidder at an auction enhances and benefits the marketing process by providing a motivation for bidders to submit a qualified bid with a

SMRH:485887125.5

high market value. The Bid Procedures permit Qualified Bidders to submit topping bids, as well as to propose alternative terms of sale. In this way, the Bidding Procedures embody an arm's-length process and ensure competitive bidding over the price and terms of sale. By making the price and terms of sale competitive, the Bidding Procedures provide proper exposure of the Assets to the market. This, in turn, will maximize the sale price of the Assets for the benefit of all creditors and the bankruptcy estate. In addition, the Bidding Procedures require Prospective Bidders to deposit a sum into escrow and to reveal their financial information, thus ensuring only earnest and fiscally capable buyers bid. Also, the Bidding Procedures provide reasonable notice of the sale to all parties in interest, including parties who might potentially be interested in bidding at the Auction. Further, the requirement of having an initial overbid higher than the stalking horse bid is consistent with the bid procedures commonly approved by bankruptcy courts which usually provide that a competing bid exceed the initial offer by a specified minimum amount.

## IV.

## CONCLUSION

For the foregoing reasons, the Debtor requests that this Court enter an order establishing the Bidding Procedures for the sale of the Assets as requested in this Motion, approving the form of APA, granting the related relief described above, and granting such other and further relief as the Court deems appropriate.

///

///

Dated:  April 4, 2018

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _____
                    */s/ J. Barrett Marum*
                        ORI KATZ
                     BARRETT MARUM
                     MICHAEL LAUTER
                      MATT KLINGER

                  Attorneys for the Debtor,
                     MedCision, LLC

# EXHIBIT A

SMRH:485860146.5

1

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into effective as of this 2nd day of April, 2018 (the "Effective Date"), by and between MedCision, LLC (the "Seller"), and BroadOak Fund II, LLC and BroadOak Fund III, LLC or their assignee (collectively the "Buyer"). Buyer and Seller may be referred to herein individually as a "Party" and collectively as the "Parties".

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, pursuant to the terms and conditions of this Agreement, those certain assets identified in Exhibit A attached hereto (the "Assets");

WHEREAS, on December 20, 2017, the Seller commenced a voluntary case (the "Bankruptcy Case") under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court");

WHEREAS, by order entered by the Bankruptcy Court on February 16, 2018 the Bankruptcy Case was converted to a case under Chapter 11 of the Bankruptcy Code;

WHEREAS, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of the Assets free and clear of all liens and encumbrances pursuant to sections 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Seller's ability to consummate the transactions contemplated by this Agreement is subject to, among other things, the entry of the Sale Order (defined below).

NOW, THEREFORE, for and in consideration of the premises and the mutual agreements contained herein, Buyer and Seller hereby agree as follows:

## I      SALE AND PURCHASE

The term "Sale Order", as used herein, shall mean an order of the Bankruptcy Court approving the transactions contemplated by this Agreement, which order shall be reasonably acceptable in form and substance to Buyer and Seller, and not be materially inconsistent with the terms of this Agreement, which, among other things, (a) approves the transactions and the terms and conditions of this Agreement, (b) finds that notice of the hearing concerning approval of this Agreement and of the transactions contemplated by this Agreement was given in accordance with applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and constitutes such notice as is appropriate under the particular circumstances, (c) finds that Buyer is a "good faith" purchaser entitled to the protections afforded by section 363(m) of the Bankruptcy Code, (d) provides that the transactions contemplated by this Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code, and (e) provides for the vesting of the Assets in Purchaser, free and clear of all liens, claims and encumbrances. Subject to the entry of the Sale Order by the Bankruptcy Court and in accordance with the terms and conditions of this Agreement, Seller agrees to sell and assign to Buyer, and

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 11 of 27

Buyer agrees to purchase and acquire from Seller, all of Seller's right, title and interest in and to the assets the Assets.

## II **CONSIDERATION**

2.1     Sale Price. Subject to the terms hereof, the purchase price for the Assets is $4,393,000 (the "Purchase Price"), consisting of a credit bid by the Buyer of $4,313,000 and a cash payment in the amount of $80,000 (the "Cash Component"). Of the Cash Component, an amount equal to $25,000 shall be paid as a deposit (the "Deposit") into the client trust account of Seller's legal counsel prior to the occurrence of an auction for the sale of the Assets. Buyer acknowledges that Seller is marketing the Assets and that Buyer's offer of the Purchase Price is subject to overbid by a third party.

2.2     Closing.

(a)     Except as otherwise mutually agreed to by the Parties, the closing of the purchase and sale of the Assets (the "Closing") shall occur no later than the third (3rd) Business Day following entry of the Sale Order by the Bankruptcy Court (the "Closing Date"). The Closing shall take place at the offices of Diamond McCarthy LLP in San Francisco, California. As used herein, the term "Business Day" means a day on which National Association banks are required to be open for business in the United States.

(b)     At the Closing, Buyer shall pay to Seller the balance of the Cash Component and deliver such documents as may be reasonably necessary to fully effectuate the Purchase Price.

(c)     Delivery of the Assets shall be at their current respective locations or at other locations to be agreed upon by the Parties.

2.3     Expense Reimbursement.

(a)     In the event that (i) the Seller does not sell the Assets to the Buyer, (ii) the Seller receives and accepts an offer from a third party to purchase the Asset that is higher than the Purchase Price, and (iii) such transaction closes, then the Seller shall promptly refund the Deposit to Buyer and Seller shall pay to Buyer the reasonable and actual documented costs and expenses incurred by Buyer (including reasonable, documented attorney's fees) in connection with the negotiation, preparation and performance of this Agreement and the transaction contemplated thereby (collectively, "Expense Reimbursement") in an amount not to exceed $25,000.00, such payment to be made within fourteen (14) days after Buyer has provided to Seller a statement reflecting the amount of the Expense Reimbursement, together with documentation reasonably substantiating the costs and expenses incurred by Buyer comprising such Expense Reimbursement and no valid, substantiated objection being interposed thereto by the Seller.

(b)     "Sale Transaction" means the transaction contemplated by this Agreement.

(c)     Each Party acknowledges that the agreements contained in this <u>Section 2.3</u> are an integral part of this Agreement and that, without these agreements, Buyer would not enter into this Agreement.

(d)     Seller acknowledges that the inclusion in this Agreement of this <u>Section 2.3</u> is a condition precedent to Buyer's execution of this Agreement and is necessary to ensure that Buyer will continue to pursue the proposed acquisition of the Assets, and Seller acknowledges that the Expense Reimbursement, if payable hereunder, (a) constitute actual and necessary costs and expenses of preserving the Seller's estate, within the meaning of section 503(b) of the Bankruptcy Code, (b) is of substantial benefit to Seller' estates by, among other things, establishing a bid standard or minimum for other potential purchasers of the Assets and placing estate property in a sales configuration mode attracting other potential purchasers, (c) is reasonable and appropriate, including in light of the size and nature of the transactions contemplated by this Agreement and the efforts that have been or will be expended by Buyer, notwithstanding that the proposed transaction is subject to higher and better offers, and (d) was negotiated by the Parties at arm's-length and in good faith.

2.4     <u>Wire Instructions</u>. All payments to Seller hereunder are to be made in US Dollars in immediately available funds.

## III     <u>REPRESENTATIONS AND WARRANTIES</u>

3.1     THE SALE OF THE ASSETS IS MADE "AS IS, WHERE IS AND WITH ALL FAULTS" AND EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN <u>SECTION 3.3</u>, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER.

3.2 Buyer hereby represents, warrants and covenants to Seller the following as of the Effective Date and as of the Closing Date:

(a)     All necessary corporate action with respect to the Buyer has been taken to duly authorize the transactions contemplated by, and to execute and deliver the documents provided under, this Agreement;

(b)     This Agreement and the documents contemplated hereby have been duly executed and delivered by the Buyer, and assuming the due authorization, execution and delivery by the Seller thereto, are valid and binding agreements of the Buyer, enforceable against the Buyer in accordance with their terms, except as such enforcement is subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws relating to or affecting creditors' rights;

(c)     Buyer has sufficient funds available to pay the Purchase Price and consummate the transactions contemplated by this Agreement; and

(d)     Buyer is duly formed as a limited liability company and validly existing

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 13 of 27

under the laws of the State of Delaware and has full legal right, power and authority to enter into this Agreement and to perform its obligations hereunder.

3.3     Seller hereby represents, warrants, and covenants to Buyer the following as of the Effective Date and as of the Closing Date:

(a)     Seller is the legal and beneficial owner of, and has good and marketable title to, the Assets;

(b)     All necessary corporate action with respect to the Seller has been taken to duly authorize the transactions contemplated by, and to execute and deliver the documents provided under, this Agreement;

(c)     Seller is duly incorporated and validly existing under the laws of the State of Delaware, and has full legal right, power, and authority to enter into this Agreement and to perform its obligations hereunder, subject to entry of the Sale Order by the Bankruptcy Court;

(d)     This Agreement and the documents contemplated hereby have been duly executed and delivered by the Seller, and assuming the due authorization, execution and delivery by the Buyer thereto, and subject to entry of the Sale Order by the Bankruptcy Court, are valid and binding agreements of the Seller, enforceable against the Buyer in accordance with their terms, except as such enforcement is subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws relating to or affecting creditors' rights;

## IV     CERTAIN COVENANTS

4.1     Seller shall file a motion with the Bankruptcy Court seeking entry of the Sale Order and thereafter will use good faith and commercially reasonable efforts to obtain the Bankruptcy Court's entry of the Sale Order approving the consummation of the transactions contemplated by this Agreement. Seller and Buyer acknowledge that this Agreement and the sale of the Assets are subject to Bankruptcy Court approval. Seller and Buyer acknowledge that (i) to obtain such approval, Seller must demonstrate that they have taken reasonable steps to obtain the highest and otherwise best offer possible for the Assets, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and other interested parties.

4.2     If the Seller has current insurance coverage for the Assets, Seller will use commercially reasonable efforts to keep such  insurance until Closing.

## V     CONDITIONS PRECEDENT

5.1     Buyer's Conditions Precedent. The obligations of Buyer to consummate the transactions to be performed by it in connection with the Closing are, in all material respects, subject to satisfaction by Seller or waiver by Buyer of the following conditions precedent:

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 14 of 27

(a)     The representations and warranties of Seller set forth in Section 3.3 shall be true and correct in all material respects at Closing;

(b)     Seller shall have performed or complied in all material respects with all covenants and agreements they are required to perform or comply with hereunder at or prior to the Closing;

(c)     The Sale Order shall have been entered by the Bankruptcy Court and shall not be subject to a stay pending appeal;

(d)     Seller shall have obtained any other authorization, license or approval under applicable law for Seller to consummate the transactions contemplated by this Agreement; and

(e)     The Assets, taken as a whole, shall have not suffered any material destruction, damage or loss.

5.2     Seller's Conditions Precedent. The obligations of Seller under this Agreement including their obligations to consummate the transactions to be performed by them in connection with the Closing are, in all material respects, subject to satisfaction by Buyer or waiver by Seller of the following conditions precedent:

(a)     The representations and warranties of Buyer set forth in Section 3.2 shall be true and correct in all material respects at Closing;

(b)     Buyer shall have performed or complied in all material respects with all covenants and agreements it is required to perform or comply with hereunder at or prior to the Closing, including without limitation by paying the Deposit as provided in Section 2.1 above and fulfilling all closing deliveries set forth in Section 6.1(b) below;

(c)     The Sale Order shall have been entered by Bankruptcy Court and shall not be subject to a stay pending appeal; and

(d)     Buyer shall have obtained any other authorization, license or approval under applicable law for Buyer to consummate the transactions contemplated by this Agreement.

## VI     CLOSING DELIVERABLES

6.1     Documents to be Delivered by Seller and Buyer. On the Closing Date, representatives of Seller and Buyer shall meet as contemplated above for the purpose of completing the sale and purchase of the Assets.

(a)     Seller' Deliverables. Simultaneously with the delivery of the items described in Section 6.1(b) below, Seller shall deliver to Buyer:

i.     A notarized Bill of Sale, Assignment and Conveyance ("Bill of Sale") for the Assets, substantially in the form attached as Exhibit B;

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 15 of 27

        ii.     Any other documents reasonably necessary to transfer title to the assets from Seller to Buyer.

    (b)    <u>Buyer's Deliverables</u>. At the Closing Date, Buyer shall deliver to Seller:

        i.     The balance of the Cash Component, after giving a credit for the Deposit paid pursuant to <u>Section 2.1</u>.

        ii.     A UCC-3 termination statement terminating all of Buyer's secured liens against the Debtor's property.

## VII  <u>INDEMNIFICATION</u>

7.1    From and after the Closing, Buyer will defend, indemnify and hold harmless Seller from and pay any and all Damages, directly or indirectly, resulting from, relating to, arising out of or attributable to any of the following: (i) breach of any representation or warranty by Buyer under <u>Section 3.3</u> of this Agreement, (ii) breach by Buyer of any covenant or obligation of Buyer in this Agreement, and (iii) the operation and ownership of the Assets after Closing.

7.2    For the avoidance of doubt, and except as required elsewhere in this Agreement, Buyer will protect, defend, forever discharge, release, waive, indemnify and hold harmless Seller from and against Damages and causes of actions for personal injuries, death or property Damages of any kind and nature sustained by or purported to be sustained or brought by any person, entity or vessel, whomsoever made and howsoever arising directly or indirectly in connection with or related to this Agreement or the Assets, after the Closing Date.

## VIII  <u>TERMINATION</u>

8.1    Subject to <u>Section 8.2</u>, this Agreement may be terminated at any time prior to Closing upon the occurrence of any one or more of the following:

    (a)    by the mutual written agreement of the Parties;

    (b)    by either Party, if (i) any law or order becomes final and effective that prohibits and makes illegal the consummation of the transactions contemplated by this Agreement, upon notification to the non-terminating Party by the terminating Party, or (ii) if Closing has not occurred by May 8, 2018;

    (c)    by Buyer, (i) if Seller shall have breached or failed to perform in any material respect any of their representations, warranties, covenants or other agreements contained in this Agreement, or (ii) if all of the conditions set forth in <u>Section 5.1</u> have been satisfied or waived, as applicable, and Seller nevertheless refuse or fail to Close the transactions contemplated in this Agreement; provided that Seller shall first be entitled to ten (10) days' prior notice and the opportunity to cure, and provided furthermore that Buyer shall not be in breach in any material respect of this Agreement at such time;

Case: 17-31272   Doc# 142   Filed: 04/04/18   Entered: 04/04/18 17:17:07   Page 16 of 27

(d)      by Seller, (i) if Buyer shall have breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements contained in this Agreement, or (ii) if all of the conditions set forth in <u>Section 5.2</u> have been satisfied or waived, as applicable, and Buyer nevertheless refuses or fails to Close the transactions contemplated in this Agreement; provided that Buyer shall first be entitled to ten (10) days' prior notice and the opportunity to cure, and provided furthermore that no Seller shall be in breach in any material respect of this Agreement at such time.

8.2      If Buyer is entitled to terminate this Agreement in accordance with <u>Section 8.1(b)(ii) or 8.1(c),</u> then Buyer shall be entitled to the return of the Deposit and to the payment of the Expense Reimbursement in accordance with <u>Section 2.3</u>, as liquidated damages and as such Buyer's sole and exclusive remedy hereunder. If Seller is entitled to terminate this Agreement in accordance with <u>Section 8.1(b)(ii) or 8.1(d)</u>, then Seller shall be entitled to retain the Deposit paid pursuant to <u>Section 2.1</u> (*i.e.*, such Deposit shall become non-refundable), as liquidated damages and as such Buyer's sole and exclusive remedy hereunder.

The Parties agree that (i) each Party's losses resulting from a termination under Section 8.1(b)(ii), 8.1(c) or 8.1(d), as applicable, would be difficult to quantify, and (ii) that the Expense Reimbursement or the Deposit, as applicable, is a reasonable measure and best estimate of each Party's damages resulting from a termination under Section 8.1(b)(ii), 8.1(c) or 8.1(d), as applicable. THE PAYMENT OF THE EXPENSE REIMBURSEMENT OR THE APPLICATION OF THE DEPOSIT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO BUYER OR SELLER, AS APPLICABLE, PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. THE PARTIES HEREBY WAIVE THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 3389. THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS <u>SECTION 8.2</u> IS INTENDED TO AND DOES LIMIT THE REMEDIES AVAILABLE TO THE PARTIES AND SHALL BE THE PARTIES' EXCLUSIVE REMEDY AGAINST EACH OTHER HEREUNDER AT BOTH LAW AND IN EQUITY, ARISING FROM OR RELATED TO A BREACH OF THIS AGREEMENT PRIOR TO THE CONSUMMATION OF THE CLOSING.

# IX  <u>ASSIGNMENT</u>

Neither this Agreement, nor any of its rights, interests or obligations hereunder, may be assigned by any Party without the prior written consent of the other Party(ies), except that Buyer may assign its rights and obligations to an entity created for the purpose of acquiring title to the Assets at Closing. No such assignment by Buyer shall relieve Buyer of its obligations under this Agreement.

# X      <u>TAXES AND FEES</u>

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 17 of 27

Buyer shall be liable for any and all transfer taxes, stamp taxes, sales and use and similar taxes, assessments, levies, tariffs, imposts, duties, tolls, export and import fees and charges, value added taxes and similar costs relating to the sale or purchase of the Assets hereunder and for any related interest and penalties. Each Party shall be responsible for its own capital gains or income taxes (as applicable) arising from the sale and purchase of the Assets. The Parties hereby agree to reasonably cooperate to minimize the tax effects caused by the sale and purchase of the Assets. To the extent personal property or other periodic taxes not based on income or receipts relate to any Assets in respect of a period that begins prior to the Closing Date and ends after the Closing Date, such taxes will be apportioned between the Seller, on the one hand, and Buyer, on the other hand, as of midnight on the Closing Date.

## XI  CHOICE OF LAW

The Parties agree that this Agreement shall be governed by and construed in accordance with the Bankruptcy Code (and California law to the extent not covered by the Bankruptcy Code). The Bankruptcy Court shall have jurisdiction over the sale or any dispute with respect thereto.

## XII COST OF THE TRANSACTION

Whether or not the transactions contemplated hereby shall be consummated, except as otherwise provided in Section 2.3, the Parties agree that each Party will pay the fees, expenses and disbursements of such Party and its agents, representatives and counsel incurred in connection with the subject matter of this Agreement.

## XIII NOTICES

Any notice, demand or communication required, permitted or desired to be given hereunder must be given in writing and shall be deemed effectively given upon receipt and shall be personally delivered, emailed, faxed or delivered by express international courier, addressed as follows:

Seller:          Kyle Everett, Chief Restructuring Officer
Development Specialists, Inc.
150 Post Street, Suite 400
San Francisco, CA  94108
keverett@dsi.biz

Copy to:        Barrett Marum, Esquire
SheppardMullin
379 Lytton Avenue
Palo Alto, CA 94301-1479
bmarum@sheppardmullin.com

Buyer:         William Snider
BroadOak Capital Partners
4800 Montgomery Lane, Suite 230
Bethesda, MD  20814
bsnider@broadoak.com

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 18 of 27

Copy to:              Brent C. Strickland, Esquire
                      Whiteford, Taylor & Preston L.L.P.
                      7501 Wisconsin Avenue, Suite 700W
                      Bethesda, MD  20814
                      bstrickland@wtplaw.com

                      Christopher D. Sullivan, Esquire
                      Diamond  McCarthy LLP
                      150 California Street, Suite 2200
                      San Francisco, CA 94111
                      csullivan@diamondmccarthy.com

or to such other address, and to the attention of such other person or officer, as any Party may designate by notice.

## XIV    ENTIRE AGREEMENT/AMENDMENT

This Agreement supersedes all previous agreements and constitutes the entire agreement of whatsoever kind or nature existing between or among the Parties respecting the subject matter of this Agreement. As between or among the Parties, no oral statements, prior correspondence (including any email correspondence), schedules, lists, brochures, drawings or written material of any kind not specifically incorporated herein shall be of any force and effect, and shall not be relied upon by the other Party. All prior representations or agreements, whether written or verbal, not expressly incorporated herein, are superseded, and no changes in or additions to this Agreement may be made by either Party except in a writing signed by both Parties hereto.

## XV  WAIVER OF CONSEQUENTIAL DAMAGES

In no event shall either Party be liable to the other Party for, and each Party expressly waives against the other Party, any claim for consequential, punitive, incidental, special or indirect loss or damages, including but not limited to loss of revenue, loss of profit or use in any way arising out of, incident to or in connection with this Agreement.

## XVI  GENERAL

16.1 The invalidity, illegality or unenforceability of any provision, or any part of any provision, of this Agreement shall not affect the continuation in force of such other part or the remainder of this Agreement.

16.2 No amendment or variation to this Agreement shall be valid unless agreed in writing by each of the Parties hereto.

16.3 This Agreement may be executed in any number of counterparts by the Parties hereto on separate counterparts, each of which when executed and delivered shall constitute an original, but all of which shall together constitute one and the same instrument. Any document or signature delivered by facsimile or electronic transmission (including .pdf) shall be deemed an original executed document for all purposes.

16.4 All of the terms and provisions of this Agreement are binding upon, and inure to the benefit of and are enforceable by, the Parties and their respective successors and permitted assigns.

16.5 No amendment, modification, replacement, termination or cancellation of any provision of this Agreement will be valid, unless the same shall be in writing and signed by Buyer and Seller. No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, may be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising because of any prior or subsequent such occurrence.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed in multiple originals by their duly authorized officers, all as of the day and year first above written.

**BUYER:**

**BROADOAK FUND II, LLC**

By:_____
Name:_____
Title:_____

**BROADOAK FUND III, LLC**

By:_____
Name:_____
Title:_____

**SELLER:**

**MEDCISION, LLC**

By:_____
Name:_____
Title:_____

SMRH:485817444.5

Exhibit A
Purchased Assets


1. <u>Purchased Assets</u>: The assets to be purchased at closing (the "Purchased Assets") shall mean all of the Seller's right, title and interest in and to the assets owned by Seller, other than Excluded Assets defined below, including without limitation: all inventory, intellectual property rights, trademark rights, designated customer contracts, all work in process under customer contracts, copies of all business books and records (including but not limited to all correspondence and communications between the Seller and any person or entity), all claims and causes of action by the Seller against any person or entity, and, to the extent transferrable, all licenses, permits and other governmental authorizations that the Seller may have.

2. <u>Excluded Assets</u>: The following shall be excluded from the sale: (a) cash and deposit accounts of the Seller; (b) accounts receivable of the Seller; (c) non-designated customer contracts: (d) real property and personal property leases; (e) the Seller's original books and records (provided, however, that Buyer will receive at closing copies of books and records); (f) rights with respect to income tax refunds or attributes; (g) all bankruptcy avoidance causes of action including those arising out of any of Sections 544 through 553 of the Bankruptcy Code; (h) all claims of the Seller's bankruptcy estate against the Seller's former directors and officers; and (h) all defenses (including without limitation any rights of subordination or recharacterization), counterclaims, crossclaims, and rights of offset or recoupment as against any claims asserted against the Seller's estate by any party other than Buyer.

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 22 of
27

1                                            **EXHIBIT B**

SMRH:485860146.5

1

**MEDCISION, LLC.**

**BIDDING PROCEDURES FOR 11 U.S.C. § 363 BANKRUPTCY AUCTION**

**1.**     **Introduction and Background**

MedCision, LLC. (the "Debtor") is debtor and debtor in possession in Chapter 11 Case No. 17-31272, pending in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"). The Bankruptcy Court has authorized the Debtor to conduct an auction sale ("Auction") of substantially all of the assets of the Debtor (the "Assets") subject to the terms and conditions and in accordance with the process and procedures set forth herein ("Bidding Procedures").

**2.**     **Key Dates**

The key dates for the sale process are as follows:

• April 12, 2018 at 10:00 a.m. PDT ......................................Requested Hearing to Approve Bidding Procedures Motion

• April 30, 2018 at 12:00 p.m. PDT ............................................................. Bid Deadline

• May 1, 2018 at 12:00 p.m. PDT ............................ Qualified Bidders Notified of Status and of Date and Time of Auction

• May 2, 2018 or May 3, 2018 …………………………………………………....Auction.

Debtor will exercise its discretion in selecting the Auction Date.  If the Debtor holds the Auction on May 2, 2018, the Debtor may allow Qualified Bidders to participate via videoconference.

• May 3, 2018 at 10:00 a.m. PDT........................................................... Sale Hearing

The Bid Deadline may be extended by the Debtor in its discretion, and the other key dates may be extended by the Debtor subject to approval of the Bankruptcy Court.

**3.**     **Stalking Horse Bidder**

The Debtor and BroadOak Fund, II LLC and BroadOak Fund, III, LLC (collectively, "BroadOak" or the "Purchaser"), entered  into an asset purchase agreement (the "APA") for the acquisition of the Assets.  Among other things, BroadOak agreed that it would pay a purchase price in an amount equal to $4,393,000 (the "Purchase Price"), consisting of a credit bid by the Buyer of $4,313,000 and a cash payment in the amount of $80,000, for the Assets, subject to overbids and the entry of an order of the Court (the "Sale Order") approving the Sale of the Property free and clear of all liens.  In the event the Debtor does not sell the Assets to BroadOak but instead closes a transaction with a third party for sale price higher than the Purchase Price, the Debtor agreed to pay the reasonable and actual documented costs and expenses incurred by BroadOak (including reasonable, documented attorney's fees) in connection with the negotiation,

Case: 17-31272    Doc# 142    Filed: 04/04/18    Entered: 04/04/18 17:17:07    Page 24 of 27

preparation and performance of the APA and the transaction contemplated thereby, in an amount not to exceed $25,000.00. A copy of the APA may be obtained by contacting counsel for the Debtor: Sheppard, Mullin, Richter & Hampton LLP, 379 Lytton Avenue, Palo Alto, CA 94301, Attn: J. Barrett Marum (bmarum@sheppardmullin.com; Phone: 650.815.2600)

### 4. Conditions for Potential Bidders to Participate in Due Diligence

To participate in the bidding process as a potential purchaser, conduct due diligence upon the Assets and be entitled to submit a bid for consideration hereunder, a party (each, a "Prospective Bidder") must deliver to the Debtor a signed confidentiality agreement reasonably satisfactory to the Debtor.

### 5. Due Diligence

Prospective Bidders complying with the above requirements shall be offered the opportunity by the Debtor to conduct reasonable due diligence until the day preceding the Bid Deadline.

### 6. Bid Deadline

The general deadline for Prospective Bidders to submit Qualified Bids (as defined below) is the Bid Deadline set forth in Section 2 above (*i.e.*, April 30, 2018 at 12:00 p.m. PDT), unless extended by the Debtor. All Bids must be submitted to the Debtor (Attn: Kyle Everett, keverett@dsi.biz) and to Sheppard, Mullin, Richter & Hampton LLP, 379 Lytton Avenue, Palo Alto, CA 94301, Attn: J. Barrett Marum (bmarum@sheppardmullin.com) and Michael M. Lauter (mlauter@sheppardmullin.com).

### 7. Qualified Bids

Assuming that there is an Auction, a Prospective Bidder will not be entitled to participate in any Auction or otherwise purchase the Assets, unless it shall have submitted a Qualified Bid by the Bid Deadline in accordance with these Bidding Procedures that includes all of the following items (the "Bid Package"):

7.1    A signed confidentiality agreement in the form provided.

7.2    A bid of at least $4,493,000.

7.3    The identity of the party submitting the bid and details regarding any other parties participating in the bid.

7.4    Written evidence that the bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms of sale set forth in these Bidding Procedures, or representation that no such authorization or approval is required.

7.5    Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to the Debtor, of the

financial ability to close under its asset purchase agreement without any financing or other contingency.

       7.6    A draft asset purchase agreement in a form substantially similar to the BroadOak APA, together with a redline version marked to show changes from the BroadOak APA. Such bid must be irrevocable.

       7.7    A good faith Deposit of $25,000 in cash, which Deposit shall be made by a transfer to a Sheppard Mullin Richter & Hampton LLP trust account and shall be refundable after closing with the successful bidder if the bidder is outbid at the sale.

       7.8    Acknowledgment satisfactory to the Debtor that the bidder is prepared to submit a declaration to support an evidentiary basis for a finding of good faith under § 363(m).

The Debtor will analyze each Bid Package based upon the criteria detailed above, and based on the capability to close a transaction, and the bid's impact on all constituents of the Debtor, and the amount of the bid (taking into account in its discretion and among all other factors the terms and conditions of any assumed debt obligations), to determine, in its sole discretion, which bids constitute "Qualified Bids" and thus entitle the Prospective Bidder to participate in the Auction if one is held. The Debtor may, at any time, contact the Prospective Bidders to obtain additional information, discuss or clarify terms and to indicate any terms which may need to be modified in order to conform the bid such that it can be treated as a Qualified Bid.

## 8.    Auction

If one or more Qualified Bids are received by the Bid Deadline, then an Auction will be conducted. The Debtor will notify BroadOak and all parties who have submitted Qualified Bids that an Auction will take place.

The initial bid at the Auction shall be the Qualified Bid that the Debtor deems, in its sole discretion, to be the highest and best Qualified Bid. Bidding shall proceed by open auction with all Prospective Bidders offered the opportunity to increase their bids in increments of at least $75,000 in value. When such bidding has ceased, the two bids that are deemed by the Debtor to be the highest and best bids will be announced at the close of the bidding. The highest and best bid is referred to herein as the "Prevailing Bid" and the maker of such bid the "Prevailing Bidder." The next highest and best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder."

## 9.    Sale Approval Hearing

At the Sale Hearing following the Auction, the Debtor will seek Bankruptcy Court approval of the Prevailing Bid and of the Back-Up Bid. The form of the Sale Order must be acceptable to the Debtor. In the event that a Prevailing Bidder cannot or refuses to consummate the sale because of the breach or failure on the part of the Prevailing Bidder, the Debtor will be permitted to close with the Back-Up Bidder on the Back-Up Bid without further order of the Court. The Debtor's presentation to the Bankruptcy Court for approval of those particular bids

does not constitute acceptance of any bids. The Debtor has accepted a bid only when the Bankruptcy Court, following the Sale Hearing, has approved the sale.

### 10. General

These Bidding Procedures are subject to modification from time to time by Debtor, as circumstances may warrant. The Debtor shall promptly notify parties in interest and Prospective Bidders of any such modifications. No bidder has any rights against the Debtor, its estate, or any of the Debtor's other professionals by virtue of any modification of these Bid Procedures, or by virtue of having or not having its bid accepted by the Debtor or approved by the Bankruptcy Court.

### 11. Terms of Sale

Except to the extent of any contrary provision in the APA of any Prevailing Bidder or Back-Up Bidder, the sale of the assets shall be on an "AS IS, WHERE IS" basis and without representation or warranties of any kind, nature or description by the Debtor or its agents, except as provided in an asset purchase agreement accepted by the Debtor and approved by the Bankruptcy Court in the Sale Order. Except as otherwise provided in the APA of any Prevailing Bidder, all of the Debtor's right, title and interest in and to the assets shall be sold free and clear of all liens, encumbrances, claims, and interests to the full extent available under Bankruptcy Code section 363, with such liens, encumbrances, claims and interests to attach to the net proceeds of the sale.