SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
J. BARRETT MARUM, Cal. Bar No. 228628
bmarum@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
MATT KLINGER, Cal. Bar No. 307362
mklinger@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947

Counsel for the Debtor,
MedCision, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>MedCision, LLC<br>  *f/k/a BioCision, LLC*,<br><br>          Debtor. | Case No. 17-31272<br><br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL LAUTER IN SUPPORT OF DEBTOR'S MOTION TO APPROVE LITIGATION FUNDING PURSUANT TO 11 U.S.C. 363(B) AND 11 U.S.C. 364**<br><br>Date: August 1, 2019<br>Time: 10:00 a.m.<br>Judge: Hon. Hannah L. Blumenstiel<br>Place: 450 Golden Gate Avenue<br>         16th Floor, Courtroom 19<br>         San Francisco, CA 94102 |

I, Michael Lauter, declare:

1. The matters stated herein are true and correct and are within my personal knowledge or information provided to me by other attorneys or employees of Sheppard Mullin, and if called upon to testify as a witness, I could and would testify competently thereto.

2. I am a partner with the firm of Sheppard, Mullin, Richter & Hampton LLP, at its office located at Four Embarcadero Center, 17th Floor, San Francisco, California 94111. I am an attorney licensed to practice law in all the Courts of the State of California and in all the United States District Courts in California.

3. I make this supplemental declaration in support of the *Debtor's Motion to Approve Litigation Funding Pursuant to 11 U.S.C. 363(b) and 11 U.S.C. 364* (the "Motion"). Unless otherwise defined in this declaration, capitalized terms herein shall have the same meaning given to them in the Motion.

4. A true and correct copy of the Prepaid Forward Purchase Agreement, pursuant to which Legalist, Inc. has agreed to extend litigation funding to the Debtor, is attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 22nd day of July, 2019 in San Francisco, California.

                                                */s/ Michael Lauter*
                                                MICHAEL LAUTER

# Exhibit A

PREPAID FORWARD PURCHASE AGREEMENT

Legalist, Inc. ("Legalist" or "Buyer") enters into this agreement ("Purchase Agreement") with Kyle Everett as Chief Restructuring Office of MedCision, LLC ("Debtor-In-Possession" or "Seller") (Seller and Buyer are each a "Party" and collectively, "Parties"), as of 07/22/2019 ("Agreement Date") subject to the entry of an order of the Bankruptcy Court authorizing Seller to enter into this Purchase Agreement. For the avoidance of doubt, the Parties acknowledge that this Purchase Agreement is in full force and effect as of the Agreement Date but may become ineffective nunc pro tunc if the Bankruptcy Court rejects the application to approve this Purchase Agreement.

Recitals

    A.    On December 20, 2017, MedCision, Inc., Debtor-In-Possession, filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code.

    B.    By Order dated February 16, 2018, the Debtor-In-Possession's case was converted to chapter 11 of the Bankruptcy Code.

    C.    By that same Order, Kyle Everett of Development Specialist, Inc. was appointed as the Chief Restructuring Officer ("CRO") of the Debtor-In-Possession on an interim basis, subject to this application for retention under section 363 of the Bankruptcy Code.

    D.    Mr. Everett was appointed the as the permanent CRO on March 20, 2018.

    E.    The Debtor-In-Possession continues to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee has been appointed by the Office of the United States Trustee.

    F.    The Debtor-In-Possession and CRO are currently being advised on and/or represented in connection with the bankruptcy by Sheppard Mullin Richter & Hampton LLP ("Bankruptcy Counsel"). The CRO is in the process of retaining Bowles Verna LLP ("Litigation Counsel") as contingency counsel to pursue claims against the Debtor's former officers and directors ("DIP Claims"), which will benefit the Debtor-In-Possession.

    G.    The Debtor-In-Possession needs funding to pay up to $100,000 in costs associated with this proposed litigation in accordance with its retention agreement with the Litigation Counsel ("Retention Agreement") which is attached hereto as Exhibit B.

    H.    The Debtor-In-Possession and Legalist have agreed that Legalist will provide certain funding to facilitate the prosecution of the DIP Claims in exchange for certain payments if any recovery is awarded to the Debtor-In-Possession in connection with the DIP Claims.

Agreement

The Seller and the Buyer, in consideration of the foregoing recitals, the mutual covenants, promises and agreements hereinafter set forth, the mutual benefits to be gained by the performance thereof, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and accepted, intend to be legally bound by the terms and conditions of this Purchase Agreement.

**1.0 Definitions**

1.1 <u>Effective Date.</u>  This Purchase Agreement is subject to approval of the United States Bankruptcy Court for the Northern District of California ("Court") and shall become effective and binding on the Parties upon final Court approval, and no appeal has been filed within the time to appeal, and no other appeal is possible ("Effective Date"). If this Purchase Agreement is not approved and/or any approval is appealed or an appeal is possible, Buyer shall have no obligation to perform.

1.2 <u>Purchase Price.</u>  In return for the Seller's agreement to pay Buyer the Investment Return in accordance with the terms of this Purchase Agreement, Buyer agrees to pay reasonable costs that Seller

is obligated to pay the Litigation Counsel related to the DIP Claims and pursuant to Seller's Retention Agreement with Litigation Counsel not to exceed $100,000 ("Purchase Price").

Buyer will pay the Purchase Price directly to Seller and Seller will pay Litigation Counsel in accordance with the Retention Agreement and/or billing statements received by Seller which are forwarded to Buyer for payment. Payments shall take place according to the litigation budget Litigation Counsel has provided ("Budget") which is attached hereto as Exhibit A and hereby incorporated by reference.

1.3 Litigation Proceeds. Litigation proceeds means any monetary value related to and/or arising from the DIP Claims, as a result of any judgment, award, order, settlement arrangement and/or compromise (including payment of any damages (whether treble, compensatory, punitive, or special)), compensation, interest, restitution, recovery, judgment sum, arbitral award, settlement sum, compensation payment, costs and interest on costs), whether in monetary or non-monetary form, whether actual or contingent, and before deduction of any taxes which the Seller may be liable to pay in connection with such value due to and/or received by Seller ("Litigation Proceeds").

**2.0 Investment Return**

2.1 Investment Return. Seller agrees to pay Buyer the amounts set forth below ("Investment Return"):

1. First, Buyer is entitled to repayment of any invoices paid directly or indirectly to Litigation Counsel as its funder costs ("Funder Costs Amount") from the Litigation Proceeds.

2. Buyer is also entitled to an additional return ("Funder Recovery Amount") in the amount of $200,000 from Litigation Proceeds if the DIP Claims resolve prior to the commencement of trial or, in the alternative, a Funder Recovery Amount of $300,000 from Litigation Proceeds if the DIP Claims resolve after trial has begun.

3. If there are no Litigation Proceeds at all, Seller will have no obligation to Buyer.

The Investment Return applies to monetary and non-monetary recovery.

2.2 Payback. All Litigation Proceeds received shall be paid into the Counsel's and/or Litigation Counsel's trust account immediately upon receipt for payment to the Buyer. Litigation Counsel shall hold the Litigation Proceeds and Investment Returns in trust for the Buyer, on terms that shall entitle the Buyer to receive such part of the Litigation Proceeds as shall be equal to the total of the Investment Return. The Seller shall use its good faith best efforts to release Litigation Proceeds to the Buyer to pay the Investment Return pursuant to this Purchase Agreement immediately.

2.3 Grant of Security. Seller immediately, upon the Effective Date, assigns to Buyer and grants a first priority security interest in the Litigation Proceeds (the "Collateral") to Buyer to secure the payment or performance of the Seller's obligations hereunder:

1. Buyer shall have a first, super-priority (pursuant to 11 U.S.C. § 364(c)(1) and/or § 364(d)), interest in the Investment Returns related to the Funder Costs Amount up to $100,000;

2. After repayment of the Funder Costs Amount to Buyer, Litigation Counsel shall then have a second priority claim on the Investment Returns for its contingency fees owed under the Retention Agreement; and

3. After payment of the contingency fee owed to Litigation Counsel, Buyer shall then have a third priority administrative claim (pursuant to 11 U.S.C. § 503-507) claim on the Investment Returns up to the remaining Investment Returns owed under this Agreement (*i.e.*, $200,000 if the case is resolved prior to trial, and $300,000 if the case is resolved after trial has begun).

Seller agrees that it will not sell, transfer, lease, assign or otherwise dispose of any of the Collateral or grant or permit to exist any encumbrance in or on the Collateral except as permitted by the Purchase Agreement, Retention Agreement, and Plan Documents. A final order of the Bankruptcy Court, provided there has been no appeal filed within the time to appeal, and also provided that no other appeal is possible, approving this Purchase Agreement shall be sufficient and conclusive evidence of the validity, enforceability, perfection and first priority of Buyer's lien on the Collateral without the necessity of taking any action to validate or perfect the lien or to entitle the lien to the priority granted herein. Seller also agrees that it will not amend the Retention Agreement without Bankruptcy Court approval and notice to Buyer.

2.4 Late Payment. If any payment due to the Buyer from the Litigation Proceeds is delayed due to the action or failure to act on the part of the Seller and/or the Litigation Counsel, the Seller shall compensate the Buyer for the delay by paying interest on such delayed amount at a rate of ten percent (10%) per annum, compounded annually, from the date on which payment was due to the date payment is received.

**3.0 Termination**

3.1 Termination for Cause. Buyer may cease making payments of the Purchase Price under this Purchase Agreement ("Terminate Payment") for cause ("Payment Termination for Cause") by written notice to Seller and either Litigation Counsel or Bankruptcy Counsel, if (i) Litigation Counsel is not retained or DIP Claims are not pursued by the Seller; (ii) Litigation Counsel or Bankruptcy Counsel are granted leave by the Court to withdraw as counsel; (iii) Seller terminates the engagement of Litigation Counsel and/or Bankruptcy Counsel; or (iv) Seller breaches the Retention Agreement or the Purchase Agreement; (v) Seller refuses to cooperate with Litigation Counsel; and/or (vi) materially adverse events occur in the litigation.

3.2 Law Firm Withdrawal. In the event Litigation Counsel and/or Bankruptcy Counsel are granted leave by the Court to withdraw as counsel or Seller terminates the engagement of Litigation Counsel and/or Bankruptcy Counsel, Seller will consult with Buyer and will seek to hire substitute counsel that is comparable to Litigation Counsel and/or Bankruptcy Counsel, as applicable. The Parties will each use good faith efforts to replicate the business arrangement reflected in this Purchase Agreement and Retention Agreement.

3.3 Effect of Termination. Any Termination for Cause shall not affect (i) Buyer's rights to seek damages (if any) and to recover any Investment Return earned as a result of a past, present, or future enforcement of DIP Claims; provided, however, that any recovery by Buyer shall be limited to Litigation Proceeds without recourse to any other assets; and (ii) the obligation of Buyer to pay costs incurred by Litigation Counsel up to the date of the termination. For the avoidance of doubt, no withdrawal by Bankruptcy Counsel and/or Litigation Counsel without good cause or termination of Bankruptcy Counsel and/or Litigation Counsel by Seller with cause shall constitute a breach of this Purchase Agreement.

**4.0 Miscellaneous**

4.1 Governing Law. Any dispute arising out of, or relating to, this Purchase Agreement (including Buyer's security interest in the Collateral) that cannot be consensually resolved by the Parties shall be resolved by and subject of the jurisdiction United States Bankruptcy Court for the Northern District of California subject to the laws of the United States and the State of California.

4.2 Dispute Resolution. Any dispute, claim or controversy arising out of or relating to this Purchase Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in San Francisco, California, before one arbitrator. The arbitration shall be administered by by JAMS Alternative Dispute Resolution ("JAMS") pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. The Parties agree to

submit to the personal jurisdiction of California for the purposes of such arbitration, and arbitration shall take place in San Francisco, California, in accordance with JAMS rules then in effect, and judgment upon any award rendered in such arbitration will be binding and may be entered in any court having jurisdiction thereof. The Party initiating the arbitration shall petition the Court to compel the respondent to arbitration as contemplated herein. Each party will bear its own costs in respect of any disputes arising under this Agreement, except that the Seller shall be liable for the Buyer's attorney's fees in connection with any dispute that results in a total or partial judgment in favor of the Buyer.

4.3 <u>Common Interest Information</u>. Seller, through Litigation Counsel, shall provide Buyer with regular status reports concerning any DIP Claims or Lawsuits, and notify Buyer promptly upon the occurrence of any material events relating to the DIP Claims; provided that such delivery, in Seller's sole discretion, does not create a material risk of waiver of the attorney-client privilege, attorney work product doctrine, any confidentiality agreement and/or any other protection. The Parties acknowledge and agree that they have a joint and common legal interest in connection with the DIP Claims and the information they share shall be entitled to the broadest so-called "common interest privilege," and/or the attorney work product doctrine and shall not be discoverable by any third party.

4.4 <u>Relationship between Buyer and Seller</u>. Buyer shall not provide legal advice of any kind to Seller. All legal services that might prove necessary shall be the sole responsibility of the attorney(s) retained and authorized by the Seller to represent them. Buyer further acknowledges that it shall issue no instructions of any kind to Bankruptcy Counsel or Litigation Counsel or to any other attorneys retained and authorized by the Seller, or otherwise exercise any influence or control over said attorneys with respect to the representation of the Seller or the conduct of any litigation. By virtue of entering into this Purchase Agreement, Buyer does not become a party to the Lawsuit or become a client of Bankruptcy Counsel or Litigation Counsel. Seller retains the unrestricted right to settle the Lawsuit at any time in good faith. The relationship of the Parties shall be that of seller and buyer, and neither Party shall be considered or act as an agent of or have any fiduciary duties to the other Party. The Purchase Agreement is not intended to create a joint venture, partnership or association between the Parties. The Parties intend that the transactions set forth in this Purchase Agreement shall be treated for income tax purposes as a prepaid forward contract and not as indebtedness, and each Party agrees to report these transactions on its tax returns in a manner consistent with such intention and to pay any applicable taxes in a similar fashion.

4.5 <u>Seller's Representations and Warranties</u>. The Seller represents and warrants to the Buyer as follows:

   a. <u>Full Disclosure</u>. The Seller and the Bankruptcy Counsel and/or Litigation Counsel have provided the Buyer all material information relating to the DIP Claims, excluding information protected solely by the attorney–client privilege. All material information the Seller and the Bankruptcy Counsel and/or Litigation Counsel have provided to the Buyer is true and correct.

   b. <u>No Impairment</u>. Other than as already disclosed to the Buyer, the Seller has not taken any action (including executing documents) or failed to take any action, which (a) would materially and adversely affect the DIP Claims, or (b) would give any person or entity (other than the Buyer and the Seller) an interest in the Litigation Proceeds.

   c. <u>Authority</u>. The Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. The Seller has the power and authority to execute and deliver this Purchase Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Purchase Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate (or, if applicable, other entity) action on the part of the Seller and no further corporate (or, if applicable, other entity) action is required on the part of the Seller to authorize this Purchase Agreement and the transactions contemplated hereby. This Purchase Agreement has been duly executed and delivered by the Seller and constitutes the valid and binding obligations of the Seller,

Doc ID: 875899c4f8ce1e62b1c5e68cc5cf2f6487debf2e

enforceable in accordance with its terms, subject to (a) laws of general application relating to bankruptcy, insolvency and relief of debtors and (b) rules of law governing specific performance, injunctive relief and other equitable remedies.

4.6 <u>Seller's Fiduciary Obligations Unaffected</u>. Nothing in this Purchase Agreement is intended to alter or restrict any fiduciary obligation owed by Seller arising under or in connection with the Plan Documents, title 11 of the United States Code, and/or provisions of any rule or law applicable to persons serving as a trustee in a capacity similar to CRO. If any provision hereof cannot be interpreted to give full effect to such fiduciary obligations, the Parties intend that this Purchase Agreement shall remain in effect and enforceable to the greatest possible extent and authorize the Bankruptcy Court to interpret or to revise the provisions of this Purchase Agreement to give full effect to such fiduciary obligations.

4.7 <u>Waiver of Claims.</u> THE SELLER WAIVES EVERY PRESENT AND FUTURE DEFENSE, CAUSE OF ACTION, COUNTERCLAIM OR SETOFF OTHER THAN CLAIMS BASED UPON THE FAILURE OF THE BUYER TO ACT IN A COMMERCIALLY REASONABLE MANNER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE BUYER GRANTING ANY FINANCIAL ACCOMMODATION TO THE DEBTOR-IN-POSSESSION. ANY AMOUNT BUYER SHALL BE LIABLE FOR IS CAPPED AT THE PURCHASE PRICE.

4.8 <u>No Interpretation Against Drafter</u>. The Purchase Agreement is the product of active negotiations by the Buyer, the Seller, and the Counsel, and shall be deemed to be drafted by all the parties and shall not be interpreted against the Buyer for this reason.

4.9 <u>Advice on this Agreement</u>. Each Party represents to the other party that it (a) has read this Purchase Agreement; (b) has been represented in the preparation, negotiation, and execution of this Purchase Agreement by legal counsel of the Party's own choice or has voluntarily declined to seek such counsel; (c) understands the terms and consequences of this Purchase Agreement; and (d) is fully aware of the legal and binding effect of this Purchase Agreement.

4.10 <u>Entire Agreement</u>. This Purchase Agreement (including any exhibits or schedules thereto) constitutes the full and entire understanding and agreement between the Parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties are expressly canceled and such cancellation is approved by the Bankruptcy Court. This Purchase Agreement shall not be amended or waived except by another written agreement approved by the Bankruptcy Court.

(*Signature Page Follows*)

IN WITNESS WHEREOF, the parties hereto have executed this Purchase Agreement as of the Agreement Date.

    DEBTOR-IN-POSSESSION:
    MEDCISION, LLC

By *Kyle Everett*
Name: Kyle Everett
Title: Chief Restructuring Officer
Address:


BUYER:
LEGALIST INC.


By *ESh*
Name: Eva Shang
Title: President
Address: 880 Harrison Street
San Francisco, California 94107

**Exhibit A**
**Budget**

|  | **COSTS** |
|---|---|
| Percipient Witness Deposition Transcripts | $25,000 |
| Filing Fees | $3,500 |
| Expert Fees | $50,000 |
| Expert Deposition Transcripts | $10,000 |
| Miscellaneous Expenses | $11,500 |
| **Total** | **$100,000** |

# Exhibit B
# Litigation Counsel Retention Agreement

Doc ID: 875899c4f8ce1e62b1c5e68cc5cf2f6487debf2e

 Audit Trail

| | |
|---|---|
| **TITLE** | Litigation Funding Agreement |
| **FILE NAME** | Medcision LFA.docx |
| **DOCUMENT ID** | 875899c4f8ce1e62b1c5e68cc5cf2f6487debf2e |
| **STATUS** | ● Completed |

## Document History

 **07/22/2019** 18:09:00 UTC  Sent for signature to Eva Shang (eva@legalist.com) and Kyle Everett (keverett@dsiconsulting.com) from eva@legalist.com
IP: 73.70.160.148

 **07/22/2019** 19:56:33 UTC  Viewed by Eva Shang (eva@legalist.com)
IP: 73.70.160.148

 **07/22/2019** 19:56:49 UTC  Signed by Eva Shang (eva@legalist.com)
IP: 73.70.160.148

 **07/22/2019** 21:12:40 UTC  Viewed by Kyle Everett (keverett@dsiconsulting.com)
IP: 107.128.96.185

 **07/22/2019** 21:17:00 UTC  Signed by Kyle Everett (keverett@dsiconsulting.com)
IP: 107.128.96.185

 **07/22/2019** 21:17:00 UTC  The document has been completed.